# EXHIBIT 8

EDEY

dealing with security for costs at all, that is entirely a matter for him.

My Lord, can I start then by clearing aside, before I come for security for costs, a few other bits and pieces. As I said, the only matters actually formally before you at this hearing are the security for costs applications but if I may be forgiven for saying it, in their usual way, the claimants have also provided the court with what they refer to as an update about various matters. There are, however, my Lord, no applications relating to any of those matters presently before the court. We are, therefore, not going to engage today with those for present purposes gratuitous points save only to make very clear to my Lord that we obviously do not accept any of the wrongdoing alleged by the claimants in the course of their updates, be that as it relates to the actual subject matter of this or any other litigation, or as regards our conduct of this litigation, including in relation to disclosure.

No doubt, my Lord, mistakes have been made along the way, but that is wholly unsurprising given the scale of the disclosure exercise and the complexity of it, which we have had to undertake in this case and it is certainly not an indicator of something nefarious.

My Lord, in addition, yesterday, late morning, without

2

EDEY

any forewarning, and indeed after there had been discussions between Enyo, Stokoe and Charles Fussell about the timing of skeleton arguments for this hearing, in which everybody agreed they should be exchanged by four o'clock on Wednesday, the day before yesterday; we received yesterday a skeleton argument from Mr. Hill and Mr. Rothschild who, it has to be said, no one on our side had previously appreciated were proposing to even attend let alone put in a skeleton argument, given that no applications are made against or by Stokoe at this hearing.

Attached to that skeleton argument was, by way of service for the first time, yet another witness statement from Mr. Tsiattalou.  Not only was the skeleton and witness statement out of the blue but the main subject matter of both was also completely out of the blue, having never before been even mentioned in correspondence.  That is so, despite the fact that what was said relates to materials apparently received by Stokoe from someone who was not their owner in highly unusual circumstances, to put it no higher, as far back as July 2022.  They were provided in what appears to been the face of it a clear breach of confidence.  They were handed over by the relevant person apparently on the basis that they were relevant to matters in these proceedings.

Since then Stokoe have seen fit to have a company called Diligence International, which has previously carried out

3

EDEY

covert surveillance of Mr. Gerrard leading to proceedings between him personally and Diligence in relation to their conduct, they have been looking at the materials to see if they could work out who did own them.  Stokoe now wish to obtain the court's blessing of their proposal as to how they should now, they say, get on with the disclosure exercise in relation to those new materials starting, it appears, immediately or at the same time but, for the first time, giving notice to all of those other individuals whose materials they may be or who may be interested in those materials.

Now, my Lord, even if there was time at this hearing to deal with these matters -- and there is not, in it is going to be tight in any event -- it is plainly, we say, inappropriate for us to get into any of this at this hearing.  We should not be bounced into trying to deal with this on the hoof in this way, and certainly it should not be dealt one until the relevant individuals have been given notice and are before the court if that is necessary.

So if my Lord is going to look at this at all, all that he should do, we would respectfully submit, is say that nothing at all should be done with these materials for the time being, the relevant individuals should be notified, everybody should have a chance to consider their position in

4

EDEY

relation to them.  That can then be explored the correspondence to see whether an agreed way forward can be found and if it cannot a proper application by whomever that may be can come before the court in an orderly and sensible fashion.

My Lord, that is what we say should happen.  We wrote a letter to that effect yesterday afternoon which may have seen in the bundle.

MR. JUSTICE MURRAY:  I have seen it.

MR. EDEY:  I am grateful, my Lord.  That is all I was proposing to say about that.  Mr. Hill is here.  He has said that if he is going to say something he only wants to say it this afternoon.

MR. HILL:  No, I am happy to deal with it this morning if that is convenient to my Lord.  I am happy to deal it with now in fact to get it out of the way.

MR. JUSTICE MURRAY:  All right.

MR. EDEY:  I am conscious if we do that, I am losing time to get on with security for costs and it is more convenient if I continue with my application and then Mr. Brisby gives this afternoon such time as he sees fit to Mr. Hill.

MR. JUSTICE MURRAY:  That is fair enough actually.  We will proceed with the security for costs application, thank you.

MR. EDEY:  My Lord, it may be that Mr. Hill does not want to waste his time listening to my security for costs submissions and

5

HILL

MR. HILL:  My Lord, my learned friend Mr. Brisby has given me a bit of his time, which I am very grateful for.  There is one substantial point from me which I have covered in ----

MR. JUSTICE MURRAY:  Sorry, was there an open question on the 12 million?

MR. HILL:  I am sorry, my Lord?

MR. JUSTICE MURRAY:  I think you just raised a question of 12 million and I do not think ----

MR. EDEY:  If I may come back on that, I had not appreciated that was the error being identified because the sums did not make sense for the reason I identified.  I will come back to my learned friend, if I may, very, very briefly in 30 seconds.

MR. PILBROW:  I think it is fair to say we did not understand the 12 million number either.

MR. JUSTICE MURRAY:  Mr. Hill?

MR. HILL:  I am grateful.  There is one substantive point from me. This is a request from the court today for a direction that the steps we are proposing to take in relation to searching three devices are a sufficient means of satisfying our disclosure obligations in respect of those devices.  It will take very little time to explain the point and we do have a proposed outcome that notwithstanding what was said this morning does progress matters and protects everyone's interests.

HILL

It was noticeable that we had opposition from the Dechert parties this morning: their suggestion that we do nothing in relation to these devices and not be progressing disclosure just in case some third party objection may come along. We do say it is rather telling that the Dechert parties have no legitimate basis from their own perspective for resisting our proposals, which can only, from their perspective, be slowing down disclosure which we want to get on with.

Now, as my Lord knows, we do have an ongoing obligation to conduct a reasonable search of documents in our control. There are three devices in our control that we consider this obligation applies to. We are here explaining to the court what it is we are doing and seeking a direction that this is an appropriate means of carrying out our duties.

My Lord, have you read the witness statement from Mr. Tsiattalou which was attached to our skeleton and has found its way into the bundle?

MR. JUSTICE MURRAY: Yes, I did.

MR. HILL: I am grateful. I will take its contents very quickly. He deals with the unusual situation that arisen. There are three devices deposited as his office. The man depositing them said that he acquired the devices lawfully and that Mr. Grayson, a former defendant in the Stokoe proceedings, had

124

HILL

recommended that he go and see Mr. Tsiattalou at Stokoe.  He left the devices of Mr. Tsiattalou saying that the material on the devices related to cases that Mr. Tsiattalou was involved in.

Stokoe have conducted a limited exercise of examining or having a firm called Diligence examine the devices to a limited extent with a view to establishing the ownership or the users of the devices.  They have not been able to establish ownership and they have not been able to establish users of one device.  But in relation to two of the devices they have been able to establish that the laptop has records pertaining to e-mail addressing relating to Mr. Del Rosso as well as a Mr. Scott Michael Moore of a law firm called Moore International.  My Lord, you will be familiar with Mr. Del Rosso's name.  He is someone who features in particular in the Stokoe proceedings in relation to allegations of obtaining confidential information.

Moore International you may be also familiar with from the papers.  That is a firm instructed in New York proceedings by a claimant named Oussama El Omari.  Those are proceedings against Mr. Gerrard, Dechert and Mr. James Buchanan.  That is another set of allegations relating to the illegal obtaining of confidential information, that is relied on in the Al Sadeq proceedings.  That is the laptop.

125

HILL

The portable hard drive contains back ups or copies of e-mails relating to Mr. James Buchanan.  He was the Chief Executive of Ras Al Khaimah Development LLC.  He was the main witness for RAKIA in the Azima trial and he also features heavily in the allegations in the Al Sadeq and Quzmar proceedings, in particular in extensive accounts of his involvement in trying to get false confessions out of Mr. Al Sadeq and there are similar allegations in the Quzmar proceedings.

Now, the last point dealt with by Mr. Tsiattalou in his evidence is that he was able to secure a further meeting with the man who deposited this material only earlier this week on Tuesday and that information also indicates that the portable drive may contain a copy of information of Mr. Buchanan and the other two devices may contain information of Mr. del Rosso.

So, my Lord, that is the factual position.  Where we end up is here, these devices and files on them are in Stokoe's possession and control.  They are documents for the purposes of the definitions in CPR 31.4, and they are in Stokoe's physical possession and therefore in their control.  They do seem reasonably likely to contain disclosable material.  They were provided on the basis they were considered to contain material relevant to the cases that Stokoe were involved in

126

HILL

and the preliminary very limited investigation into users and owners has indicated that they are likely to hold relevant material in relation in particular to Mr. del Rosso and Mr. Buchanan.

In our submission, there is currently ongoing a prima facie duty on Stokoe to conduct a reasonable search, and it is worth noting there that on the basis of what has been said to us, all this information was provided and obtained lawfully. But even if it had not been, that would not stop the duty on us, now that this information is in our possession, to conduct a reasonable search. I have given my Lord a reference to the passage in Matthews & Malek which is a colourful passage, reference to my skeleton. I will hand up the extract.

(Document handed to His Lordship)

MR. JUSTICE MURRAY:  Thank you.

MR. HILL:  It is the section at 5.63 on "Custody and physical possession" at the bottom of page 181. I just invite my Lord to read that paragraph to yourself. It gives a colourful illustration of quite how wide the obligation is, however the material arrives in ones hands.

MR. JUSTICE MURRAY:  (Pause for reading)  Yes.

MR. HILL:  So, there is this prima facie obligation upon Stokoe, but, of course, there are unusual features of this situation which is why we are here openly canvassing the matter with the

HILL

court.  First, there may be information belonging to third parties which is privileged or irrelevant material.  We accept there should be a process to deal with the risk of Stokoe seeing that information.  That is why, as Mr. Tsiattalou explains in his witness statement, he proposes to use external data analysis, a third party provider, to extract data from the devices by key words, and then second to that engage independent lawyers, nothing to with those instructed on this case, to extract or devise a scheme to extract obviously privileged material.  We will also write to Mr. Buchanan to Mr. del Rosso to Mr. del Rosso's son, whose name also appears and to Scott Michael Moore promptly after this hearing to give them an opportunity to make objection and to assert any claims to the property and make proposals if they do.

The individuals that we are writing to, we would also notify of their rights under CPR 31.22, to restrict the use of documents on disclosure so we will inform them of those too. I should say but not to the encrypted device which we as yet have not had proposals for.  We have to keep that under review and revert to the court.

But we do invite the court to make a direction today. We have ongoing obligations that apply to us today, and we do need to know where we stand.  We do submit that the course that we are proposing is an appropriate one and is an order

HILL

that the direction that the court can give us today.  I just hand up a copy of the order.  (Document handed to His Lordship) This is a copy of the order and, obviously, it can be inserted into any wider order made, or it can be freestanding.

What we suggest is that the court directs that the obligations to conduct a reasonable search that may arise in Stokoe Partnership Solicitors and its clients pursuant to CPR 31.7 in respect of the three electronic devices described in the Tsiattalou statement shall be satisfied by undertaking a search on the basis proposed in section E of the Tsiattalou statement."

I should say we are, of course, also happy to include an express liberty to apply, including to the individuals who are going to be notified.  We are happy to build that into the order.

One other protection that we are happy to offer in light of observations made this morning by Mr. Edey, is it is obvious, of course, that the third party processes that we are undertaking will take some time.  We are happy to build in an express provision that none of this material, once it emerges from a third party provider, should come into Stokoe's hands for a period of time, say 21 days.  That means that if there is a desire on any third parties to make objection or have

129

HILL

some counter proposal, they can do so before any information reaches Stokoe. It will just only have been dealt with by sn independent third party provider with no interest in the litigation, we are happy to build that into the order also.

That is what we invite the court to direct today. We have had objection from Enyo yesterday, and most of those points were repeated by Mr. Edey this morning. They are, in essence, trying to resist us progressing our own disclosure obligations which seems very strange. It is a strange position for a litigant to say that we should not get on with our own disclosure obligations for some undefined period, and as they say it is really just in case someone might come along and object.

Dechert, the Dechert parties, have themselves no propriety interest or other interest in these devices. Their only legitimate interest should be in progressing disclosure. Even making the submissions they made this morning and in their letter are quite wrong because they were coming up and saying, "Even though we have no interest, do not progress your own disclosure". There is no, in my submission, possible legitimate basis for the resistance on the Dechert parties. What it, of course, shows is their desire to, they hope prevent or at least delay more incriminating documents emerging. That, of course, is not a legitimate basis for

130

HILL

trying to slow down the process. If there are genuine concerns about third party objections, in our submissions those are more than covered by our proposal that we engage third party independent assistance and we have a period of time before any material finds its way to Stokoe for review.

If I could just pick up very quickly the points that are made in the Enyo letter which were repeated this morning? The first is a complaint of the short notice with which we are seeking relief. Well, as Mr. Tsiattalou's witness statement explains, it was not until Tuesday that Mr. Tsiattalou met with the provider of these devices and obtained the information that he deals with in the witness statement. We then had to prepare a witness statement and skeleton argument and what we are doing here is seeking directions from the court at the first opportunity when we can come before the court, which is, in our submission, the proper thing to do. As we say, the Dechert parties have no legitimate basis for objecting to this. It is hard to see why they needed any more notice than they got, because there is no proper objection that they can reasonably make.

The second point made and repeated today is a complaint about the time taken between Mr. Tsiattalou receiving the devices in July and sending them to Diligence for initial processing in October. That is an odd complaint given that

131

HILL

Dechert's punchline is that Stokoe should now be doing nothing with the devices. But it is a point that goes nowhere for the question for the court today, which is what are we to do now with regard to our on going disclosure obligations?

I should just say, the idea that Mr. Tsiattalou should now be required to produce a witness statement explaining this delay is far over the top and there is nothing particularly remarkable given the very unusual situation in which Stokoe found themselves in August that a bit of time was taken, especially given that summer intervened to work out what they should do with the devices that had been put in their lap.

The next point is a complaint, a very odd complaint, from Enyo about the use of Diligence when they have been the subject of litigation from Mr. Gerrard. This is an unfortunate point that was repeated today. Those proceedings were discontinued by Mr. Gerrard on terms that he paid costs to Diligence. So Enyo's letter is thoroughly misleading, and in any event it is a wholly irrelevant point. This is dead litigation, terminated proceedings, and Diligence have only conducted a very narrow and technical exercise. There is no point other than a smokescreen, irrelevant point to be made out of that.

The next point is a complaint about there being no application notice. This is our request to the court

132

HILL

exercising its case management functions to give us directions on our ongoing disclosure obligations. It is not a natural or orthodox situation for an application notice at all, we are simply inviting the court's direction. We do have a draft order, of course.

The next point is that it is said no skeleton was exchanged on Wednesday. Now Wednesday was the date for exchange of skeletons on the security application. This is nothing to do with the security application. This is a separate request to the court for guidance; never contemplated any exchange of skeletons, because there is nothing that they could say on this point. It is a matter where Dechert parties can have no legitimate objections. We have provided a skeleton and we done so in the usual court timing within a day before the hearing. So there is nothing unusual in that way.

The next point, this is a more significant one, is it a reference to notice, notice being given to Mr. Buchanan or other individuals. My learned friend seeks to put the cart before the horse. As we made clear, our proposal is to give notice promptly after this hearing, once we have the guidance from the court about what we intend to do with the devices, and to make sure, as I have suggested, that there is time for those parties to react once we have given them notice. That is dealt with.

133

HILL

Then it is said there is not time to deal with the matter at the hearing.  There is.  I hope I am being as efficient as I can be and it is not taking much court time. I should say, given there is nothing by way of a legitimate point for the Dechert parties or anyone one else to say, I would hope that my submissions would be the end of the submissions on the matter.

Then, in the correspondence and from my learned friends this morning, there is their punchline that nothing should be done, they say, other than notifying the third party individuals and if they respond then embarking on some process of seeking to agree various matters with those third parties: we submit a wholly unnecessary way of this matter being kicked into the long grass.  Dechert's ideas all assume that we will get engagement from these third party individuals if we write to them.  We do not know, of course, if any of these individuals will want to assert any rights or raise any objections as is quite possible when we write to them we will simply get a nil return and be left in limbo when what we should be doing is getting on with disclosure obligations.

We say that is just a way of punting things into the long grass for no good reason and much the better course is to make the order as we suggest, build in time for objection as we are proposing to do, otherwise we do invite the court to

HILL

make the order in the form I suggested today.

Unless I can assist you further.

MR. JUSTICE MURRAY:  No, thank you.

MR. HILL:  I am grateful.

EDEY

MR. EDEY:  May I pick up that very briefly?  As I say, I am not going go to be bounced into trying to deal with this substantively.  My learned friend may well be right that we, Dechert, my client do not have a position on any of this. I think my Lord though would expect that in the absence of potentially interested parties who have not even been notified this was being raised, someone responsible standing in front of you might alert the court to the potential dangers of proceeding without hearing from those who are interested.

There may not be in fact very little between my learned friend and I.  He agrees that time should be built in for these people, if they wish to, to speak up.  I am certainly not suggesting it all gets kicked into the long grass, that is not in our interest either.  All we are proposing is that my Lord says nothing should happen for whatever short period it is within which they will be notified and given an opportunity which they may take or may not.  If they do not then they will have lost that opportunity.  That is a matter for my Lord, as I say, I am not here today trying to delay anything.  I am simply making the points that in the absence on a balanced application that has come up this way without the people who may be interested in this before you, just urge my Lord to proceed with caution.  That is all I have to say about that.

MR. JUSTICE MURRAY:  On that point, you are then going on to go on

EDEY

the other things.  I wonder whether Mr. Pilbrow had anything to say on that point.

MR. PILBROW:  On that point, no, I adopt Mr. Edey's cautious approach.  We knew nothing about this until yesterday.  The one point that was picked up against me is that any point made in respect of Diligence is a bad point.  Diligence were sued by Mr. and Mr. Gerrard, so Diligence International have a conflict as they were sued by them and admitted covert surveillance of Mr. and Mrs. Gerrard.  The notion that in the world of people to whom one could go to have this material reviewed, in the light touch way they say it is, that they picked the one firm who admitted covert surveillance of Mr. Gerrard is a little surprising.

MR. JUSTICE MURRAY:  I am uncomfortable giving a direction today given the short notice that was given of this issue.  I do want the there to be some sort of practical outcome.  Is there any scope, do you think, for agreeing some ----

MR. PILBROW:  It does sound like what the difference between Mr. Edey and I might be is that what I am suggesting is we have 21 days before anything gets passed from the independent parties to Stokoe, one could build in a prior seven-day window before the start of the first process.

MR. HILL:  Seven days is quite short, I am not trying to push it back, it is very difficult, just by way of example, if you

137

EDEY

were a third party whose material it is, my learned friend emphasised the point that it is not said to have been obtained by the person who gave it illegally, that does not mean he was entitled to hand it on to somebody else.  There is no basis for supposing he did have authority to do that.  If you were the person whose material it was, you might say if there are, as there may be, serious privilege issues, that Stokoe should not be doing the exercise at all.  What should actually be happening is they should be doing the exercise to preserve the privilege and they should then provide disclosure of the relevant documents.  I do not know whether that is what they will say, and it is not what I am suggesting should happen. I am simply giving an example of the sort of point that might arise and the dangers therefore of the exercise even being begun before they had an opportunity.

Then it comes bluntly, my Lord, down to my Lord's view of how long one should have for these people to, as it were, respond having been given notice, seven days feels like a short period given they are likely, if they respond at all or want to want to take advice, 14 days sounds more reasonable but my Lord, it is a matter for my Lord.

MR. JUSTICE MURRAY:  I agree seven days does sound short.  So 14 days does sound more reasonable.  Is there some version of this order that we can ----

EDEY

MR. PILBROW:  I can build into the same order a 14 day prior window before even the first step starts, we can keep with the 21.  The 21 will probably become probably academic by then, because the process will take rather longer than 21.  We will keep 21 in and have both of those protections, 14 days before anyone gets anything, 21 before any process yields anything to Stokoe.

MR. HILL:  Notice is going to be given to RAKIA as well, represented by Allen & Overy.  Obviously if it relates to, well, Mr. Buchanan, has been said, was the chief executive of RAKIA, it would be a little unusual if these materials are said to be relevant to the proceedings, that they must relate to his time as CEO of RAKIA.

MR. PILBROW:  I would have thought that was a matter for Mr. Buchanan.

MR. JUSTICE MURRAY:  If they relate to his time as CEO that is an also a matter for RAKIA.

MR. PILBROW:  We are happy.

MR. EDEY:  I think on that basis we can probably draw up a form of order for my Lord.

MR. JUSTICE MURRAY:  Perhaps you can just agree the form of order. It sounds like we perhaps have an agreement in principle.

MR. EDEY:  I turn to security for costs.  My Lord, first can I correct something I said.  In my enthusiasm I thought

139

                              HOUSEKEEPING

MR. BRISBY:  I believe Monday is fine.

MR. JUSTICE MURRAY:  So Monday week, in effect, would be the idea.
You think that would work?

MR. PILBROW:  We will make it work my Lord.

MR. JUSTICE MURRAY:  Okay.

        Mr. Hill?

MR. HILL:  My Lord, I am conscious, on my aspect, we have reached
a finality subject to agreeing the wording of the order.  I am
conscious we have an obligation to write to the individuals
promptly.

MR. JUSTICE MURRAY:  Yes.

MR. HILL:  That means we would like to write and say what the
order is.  If it is possible could we just tie that down now.
I think we reached a landing between us orally.  I will read
out where I think we got to.  It is as per the draft I handed
up, except that after the word "section E of the Tsiattalou
statement" there should be a comma and it should then say,
"which is to commence no earlier than 28th January 2023" --
that is a 14-day window -- "with the resulting documents not
to be provided to the Stokoe Partnership Solicitors before 4th
February 2023".  That was my original 21 days which I said
should be retained.  Then a new 2:  "There be liberty to
Mr. James Buchanan, Mr. Leo del Rosso, Mr. Nicholas del Rosso,
Mr. Scott Michael Moore and Ras Al Khaimah Investment

160

HOUSEKEEPING

Authority to apply in respect of the order made at paragraph 1 above."

I think that records where got to.  I propose we submit that promptly to my Lord's clerk and then we can write promptly to the various parties and individuals.

MR. EDEY:  I am trying to do this off the top of my head without sight of anything.  I think, at the very least, it would at least to contain "Upon an undertaking to notify the various people".

MR. HILL:  That is what built into what is said in Mr. Tsiattalou's witness statement.  That is the process that is recorded in subparagraph (1).

MR. EDEY:  That does not mention RAKIA though.

MR. HILL:  Oh I see, sorry.  Yes, okay.

MR. EDEY:  I think it would be helpful if the order just says, whether it is an undertaking upon agreeing to notify the various people you identify in the witness statement plus RAKIA.

MR. HILL:  Can I suggest, we have two recitals, we have a third recital "And upon Stokoe Partnership Solicitors undertaking, to notify the persons referred to in paragraph 2 below of this order".  Will that do it?

MR. EDEY:  Off the top of my head, as best I can, yes, that sounds right.

HOUSEKEEPING

MR. HILL:  I am grateful.

MR. EDEY:  I think we are agreed but we would quite like to see it, if we can.

MR. HILL:  To see what?

MR. EDEY:  To see the order.  You will draw something up and send it to us?

MR. HILL:  Yes.

MR. EDEY:  I think we have thrashed out the points, but we would like to see it in black and white, my Lord, before we go ----

MR. HILL:  What I want to avoid, though, is there being a dispute of any kind today such that we are in a jam with our obligation to give prompt notification.  We want to have the order settled so we can say, "Here is the order".

MR. JUSTICE MURRAY:  All right.

Coming back to the judgment on the security for costs, which I will read out on Monday week, as a practical matter, I think it might be difficult to list that before 3.30.  I did mention an hour and a half window.  We have gone to quarter to five.  We might have to do something similar on that day, I think, because I need to probably preserve at least one hour for the criminal trial after the lunch adjournment.  So the idea would be 3.30 on Monday week.

MR. EDEY:  Thank you.  I am very grateful to the court staff for sitting late.

162

HOUSEKEEPING

MR. JUSTICE MURRAY:  Yes, I am very grateful to the court staff as well for having borne with us.

Unless there is anything else?  (No response)  Thank you.

- - - - - - - -

163