# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

OUSSAMA EL OMARI

                Plaintiff

          v.

DECHERT LLP, et al.

              Defendants.

:
:
:
: Civ. No.  1:23-cv-04607   ( LAK/OTW)
:
:   ORAL ARGUMENT REQUESTED
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS DEL ROSSO AND VITAL MANAGEMENT SERVICES TO DISMISS THE COMPLAINT AND IN OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION**

Samuel Rosenthal, Esq.
Lisa A. Herbert, Esq.
Nelson Mullins Riley & Scarborough LLP
330 Madison Avenue
27th Floor
New York, New York 10017
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com
Tel:        212.413.9058
Fax:        646.428.2610

*Counsel for Nicholas Del Rosso and
Vital Management Services, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ...............................................................................................3

      A.      Plaintiff's Earlier Unsuccessful Lawsuits Directed at RAK, or Related
             Entities ...................................................................................................3

      B.      Plaintiff's Reliance on Other Allegations of Hacking ...........................4

      C.      El Omari's New Claim at Issue ..............................................................5

      D.      Facts Relating to Plaintiff's Motion for a Preliminary Injunction .........6

             1.      The London Laptop......................................................................7

             2.      Payments to Fact Witnesses and Reliance on Stolen Bank
                  Statements ....................................................................................9

ARGUMENT ................................................................................................................10

I.      STANDARD OF REVIEW AND BURDEN ON THE PLAINTIFF .............10

II.     JURISDICTION IS LACKING AS TO DEFENDANTS VITAL AND DEL
       ROSSO ...........................................................................................................11

      A.      Personal Jurisdiction as to Del Rosso and Vital Is Lacking .................11

             1.      Jurisdiction Does Not Exist Under the N.Y. Long-Arm Statute or
                  the Due Process Clause Based on the Conclusory Allegation that
                  Meetings Occurred Here ............................................................11

             2.      Jurisdiction Does Not Exist Based on An Agency Theory.........14

      B.      Venue Is Improper in this District ........................................................16

III.    DISMISSAL IS APPROPRIATE BASED ON THE GOVERNING STATUTE
       OF LIMITATIONS..........................................................................................16

IV.     PLAINTIFF'S COMPLAINT FAILS TO SATISFY TWOMBLY AND IQBAL
       BY RELYING ON SPECULATION, SURMISE AND CONJECTURE.........18

      A.      The Claim Under North Carolina Law Is Deficient..............................19

      B.      The Conclusory Allegations Relating to the CFAA are Deficient ........19

V.      IF THE CASE IS NOT DISMISSED IN ITS ENTIRETY, THE COURT
       SHOULD DENY THE REQUEST FOR A PRELIMINARY INJUNCTION.................23

      A.      Plaintiff Cannot Show that He is Likely to Succeed on the Merits of His
             Complaint..............................................................................................24

             1.      Conduct by Azima and Stokoe – Relied Upon by Plaintiff In This
                  Case -- Render It Even Less Likely That Plaintiff Will Prevail in
                  this Case .....................................................................................24

2.      Plaintiff Cannot Rely on Allegations Relating to Aditya Jain in Light of the Incontrovertible Evidence that Those Making Hacking Claims Were Engaging in the Illegal and Unethical Practice of Paying Fact Witnesses, including Jain ........................................................25

B.      Plaintiff Cannot Show Any Irreparable Injury Unless an Injunction Issues ..........28

C.      Plaintiff Has Not Even Tried to Allege that a Preliminary Injunction Is In the Public Interest .................................................................................................29

CONCLUSION ..............................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbogast v. Kansas*,
752 F. App'x 582 (10th Cir. 2018) ...................................................................................3

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ..........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................10, 11, 18, 20

*Assoc. Producers Ltd. v. Vanderbilt Univ.*,
76 F. Supp. 3d 154 (D.D.C. 2014) .................................................................................14

*Azima v. de Rosso*,
No. 1:20CV954, D.E. 65 (M.D.N.C., Dec. 10, 2021) .................................................5, 17

*Azima v. Dechert, et al.*,
S.D.N.Y., No. 1:22-cv-08728 (filed Oct. 13, 2022) .......................................................5

*Azima v. Del Rosso and Vital Management, Inc.*,
M.D.N.C. No. 1:20-cv-00954 ..........................................................................................5

*Azima v. Rak Inv. Auth.*,
305 F. Supp. 3d 149 (D.D.C. 2018) ...............................................................................13

*Azima v. RAK*,
No. 16-cv-0948 (KBJ), Dkt. No. 1 (Complaint, filed 9/30/16) .....................................5

*Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*,
437 Fed. App'x 57 (2d Cir. 2011) .................................................................................28

*Boland v. Fortis Constr. Co., LLC*,
796 F. Supp. 2d 80 (D.D.C. 2011) .................................................................................11

*Boykin v. KeyCorp*,
521 F.3d 202 (2d Cir.2008) ...........................................................................................20

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......................................................................................................15

*Caldwell v. Cablevision Sys. Corp.*,
925 N.Y.S.2d 103 (N.Y.App.Div.2011) .........................................................................26

*Canal Authority v. Callaway*,
    489 F.2d 567 (5th Cir. 1974) ............................................................................24

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)..............................................................................12

*Cockrum v. Donald Trump for President, Inc.*,
    319 F. Supp. 3d 158 185-86 (D.D.C. 2018)......................................................15

*Combs v. Bakker*,
    886 F.2d 673 (4th Cir. 1989) ............................................................................11

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)........................................................................................12

*DISH Network Corp. v. FCC*,
    653 F.3d 771 (9th Cir. 2011) ............................................................................23

*DiStefano v. Carozzi North America, Inc.*,
    286 F.3d 81 (2001)............................................................................................13

*Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y. City Dep't of Educ.*,
    9 F.4th 91 (2d Cir. 2021) ...................................................................................6

*Doe v. Fed. Democratic Republic of Eth.*,
    851 F.3d 7 (D.C. Cir. 2017) ..............................................................................13

*El Omari v. Buchanan*,
    No. 20-cv-2601 (S.D.N.Y., filed March 27, 2020).......................................3, 17, 18

*El Omari v. INTERPOL*,
    No. 211458 (2nd Cir. May 24, 2022).............................................................3, 4

*El Omari v. RAKFTZA, et al.*,
    No. 16-cv-3895 (S.D.N.Y.)..................................................................................3

*Ennenga v. Starns*,
    677 F.3d 766 (7th Cir. 2012) .............................................................................3

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)..............................................................................28

*First Chi. Int'l v. United Exch. Co.*,
    836 F.2d 1375 (D.C. Cir. 1988) ........................................................................14

*Garcia v. Arevalo*,
    No. 93-CV-8147, 1994 WL 383238 (S.D.N.Y. June 27, 1994) ..........................28

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
   667 F. Supp. 2d 308 (S.D.N.Y. 2009)................................................................14

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assoc.*,
   865 F.Supp. 1516 (S.D. Fla. 1994), *rev'd in part on other grounds,* 117 F.3d
   1328 (11th Cir.1997)........................................................................................27

*Estate of Graham v. Morrison*,
   168 N.C. App. 368 (2005) ...............................................................................19

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
   822 F.3d 709 (4th Cir. 2016), vacated on other grounds, 137 S. Ct. 1239
   (2017)........................................................................................................6, 21

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) .......................................................................12

*Gulf Ins. Co. v. Glasbrenner*,
   417 F.3d 353 (2d Cir.2005)........................................................................11, 16

*Guo Jin v. EBI, Inc.*,
   No. 05-CV-4201, 2008 WL 896192 (E.D.N.Y. Mar. 31, 2008)............................13

*J & J Sports Prods., Inc. v. Daley*,
   No. 06-CV-0238, 2007 WL 7135707 (E.D.N.Y. Feb. 15, 2007) ...........................21

*In re Kien*,
   372 N.E. 2d 376 (Ill. 1977) .............................................................................26

*Lake Mary L.P. v. Johnston*,
   145 N.C. App. 525 (2001) ...............................................................................19

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
   6 F.4th 293 (2d Cir. 2021) ................................................................................6

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) (per curiam)....................................................................23

*Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Co-op Productions, Inc.*,
   479 F.Supp. 351 (N.D. Ga. 1979) ....................................................................24

*Mullins v. City of New York*,
   626 F.3d 4716 (2d Cir. 2010)............................................................................6

*New York v. Solvent Chemical Co.*,
   166 F.R.D. 284 (W.D.N.Y. 1996)......................................................................26

*North American Soccer League, LLC v. United States Soccer Federation, Inc.*,
883 F.3d 32 (2d Cir. 2018)..................................................................................23

*Philpot v. Kos Media LLC*,
No. 16-CV-1523, 2017 WL 2270248 (S.D.N.Y. Apr. 21, 2017) ............................12

*Plair v. City of New York*,
789 F.Supp.2d 459 (S.D.N.Y. 2011)......................................................................10

*RAK Investment Authority v. Azima*
[2020] ........................................................................................................................5

*Rankel v. Kabateck*,
No. No. 12 CV 216(VB), 2013 WL 7161687 (S.D.N.Y. Dec. 9, 2013)..................16

*Rocheux Int'l of New Jersey, Inc. v. U.S. Merchants Financial Group, Inc.*,
Civ. No. 06-6147, 2009 WL 3246837 (D.N.J. Oct. 5, 2009)..................................27

*Smith v. Jenkins*,
452 A.2d 333 (D.C. 1982) .....................................................................................14

*Staehr v. Hartford Fin. Servs*,
547 F.3d 406 (2d Cir. 2008)................................................................................... 3

*Steel Co. v. Citizens for a Better Env't*,
532 U.S. 83 (1998)..................................................................................................11

*Tai Sports, Inc. v. Hall*,
2012 N.C.B.C., 62 (N.C. Super. Ct. Dec. 28, 2012)..............................................19

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) ...............................................................................10

*Twombly Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................... *passim*

*Universal Leather, LLC v. Koro AR, S.A.*,
773 F.3d 553 (4th Cir. 2014) .................................................................................15

*Ward v. Nierlich*,
No. 99-14227-civ, 2006 WL 5412626 (S.D. Fla. Sept. 20, 2006)..........................27

*Whitaker v. American Telecasting, Inc.*,
261 F.3d 196 (2d Cir.2001).............................................................................10, 11

*Zubulake v. UBS Warburg*,
2020 FRD 212 (S.D.N.Y. 2003) .............................................................................29

**Rules**

Fed.R.Civ.P. Rule 12(b) ...........................................................................................18, 20

Fed.R.Civ.P. 12(b)(2) ..........................................................................................1, 10, 11

Fed.R.Civ.P. 12(b)(6) ...............................................................................................1, 3

N.Y. C.P.L.R. § 302 ....................................................................................................12

North Carolina Rule of Professional Conduct 3.4 ......................................................26

**Statutes**

18 U.S.C. § 1030 .....................................................................................................1, 16

18 U.S.C. § 1030(e)(8) ...............................................................................................17

18 U.S.C. § 1030(g) ....................................................................................................16

28 U.S.C. § 1391 ...........................................................................................................1

28 U.S.C. § 1391(b)(1) ...............................................................................................16

28 U.S.C. §1782 ........................................................................................................9, 10

**Other Authorities**

available at https://docs.broadcom.com/doc/intelligence-report-jan-14-en .................20

FBI Report, Spoofing and Phishing available at https://www.fbi.gov/how-we-can-
    help-you/safety-resources/scams-and-safety/common-scams-and-
    crimes/spoofing-and-phishing; .............................................................................19

FTC, "How To Recognize and Avoid Phishing Scams," available at
    https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams ..........19

Defendants Nicholas Del Rosso and Vital Management Services, LLP ("Vital") (collectively "Defendants") file this Memorandum in support of their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), based on the failure to state a claim; under Fed.R.Civ.P. 12(b)(2), for lack of jurisdiction; and under 28 U.S.C. § 1391, for lack of venue. This Memorandum is also submitted in opposition to the motion for a preliminary injunction by Plaintiff Oussama El Omari ("Plaintiff" or "El Omari").

## I.      INTRODUCTION

The present suit alleges violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and North Carolina law dealing with conversion. The Complaint alleges that a computer device owned by Defendants Del Rosso and Vital (the "Laptop"), which was left in London, may contain emails from Plaintiff's counsel which were hacked from Plaintiff's computer using spoofing emails. See Complaint, ¶¶ 19-21.[1] The English Court recently conducted a hearing as to the Laptop, and after finding that it had been stolen, ordered it be returned to Defendants.[2] T Defendants agreed to hire an independent consultant who would remove the data allegedly belonging to Moore or his counsel. See Rosenthal Decl., Ex. D. Plaintiff declined to appear or participate in those proceedings, although he now seeks a preliminary injunction that would interfere with the procedure adopted by the English Court for dealing with the Laptop. As explained below, Plaintiff instead filed this lawsuit, which follows multiple unsuccessful earlier

---

[1] Plaintiff's Complaint refers to two additional devices: an external hard drive and a laptop owned by a non-party to this case. Those devices are not in Defendants' possession, and there apparently is no claim that evidence exists on those devices relating to Plaintiff.

[2] The transcript of proceedings during the second day of hearing is attached to Rosenthal Declaration as Exhibit D. The Court intends to  issue a judgment and order memorializing its ruling.

efforts by El Omari to sue over alleged efforts by a foreign government, Ras Al Khaimah ("RAK"), to target him through, among things, spoofing emails.

This lawsuit suffers from several flaws.  Most important, there is no personal jurisdiction and venue as to either Defendant.  As demonstrated below, the basis for asserting jurisdiction consists solely of conclusory allegations which, even if true, are insufficient to sustain personal jurisdiction and venue.

Second, the Complaint comes after Plaintiff has repeatedly filed unsuccessful lawsuits claiming that his computer was hacked after he was targeted by his former employer, whom he was convicted of defrauding.  These earlier lawsuits are highlighted in the Complaint, see Compl., ¶ 16 *et seq.*, but do little to validate his allegations.  Instead, they simply show that his claim under the Computer Fraud and Abuse Act ("CFAA"), and North Carolina trade secrets law is time-barred.

Finally, the Complaint is based entirely on speculation and conjecture.   The conclusion drawn by Plaintiff, which are based on "information and belief," cannot cross the threshold from the speculative to the plausible.  *See Twombly Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

We respond herein also to the motion for a preliminary injunction.  Defendants have already agreed to the stipulation with Dechert resolving the need for a preliminary injunction as long as it does not interfere with the rulings by the English Court.  Plaintiff, however, initially demanded that his own expert examine the Laptop, even though it contains Defendants' confidential, privileged or personal emails, and insists that his own expert remove any data which may belong to Plaintiff.  *See* Compl. ¶ 20.   Plaintiff then argued that no one should access the Laptop, even though Defendants are obviously entitled to access their own laptop. *See* ECF 32.  The parties are continuing to discuss a possible resolution which would not interfere with the procedure adopted by the English Court, and protect all parties.

## II.       BACKGROUND

Plaintiff is the former Chairman of the Ras Al Khaimah Free Trade Zone Authority, ("RAKFTZA"), a governmental entity under the authority of the Ruler of RAK, an Emirate of the United Arab Emirates, ("UAE").  Compl., ¶ 4.[3]  He was previously convicted in the UAE of engaging in fraud.  See *El Omari v. INTERPOL*, No. 211458 (2nd Cir.  May 24, 2022).[4]   The Dechert law firm previously represented RAK, including various agencies and offices, in various matters.  Compl., ¶ 4.  In connection with its representation of RAK, Dechert retained Defendant Vital, which is owned by Mr. del Rosso, to provide investigative services.  *Id.*

### A.      Plaintiff's Earlier Unsuccessful Lawsuits Directed at RAK, or Related Entities

In 2016, following the termination of his employment in 2012, Plaintiff sued a number of parties, including RAKFTZA.  *Id.*, ¶ 17 (citing *El Omari v. RAKFTZA, et al*., No. 16-cv-3895 (S.D.N.Y.).   Plaintiff alleged, *inter alia*, breach of contract, fraud and infliction of emotional distress relating to, *inter alia*, allegations that El Omari had been involved with Iranian sanction violations while working for RAKFTZA.  *Id.*¶ 17.  That suit was dismissed in 2017.  *Id.*

On March 27, 2020, Plaintiff filed a second lawsuit against various individuals and entities associated with RAK.  *Id.* ¶ 18 (citing *El Omari v. Buchanan*, No. 20-cv-2601 (S.D.N.Y., filed March 27, 2020).  This time Plaintiff alleged violations of the Civil Racketeer Influenced and

---

[3] As required under the rules governing this motion, we have assumed for purposes of this motion that the facts contained in the Complaint as true.  See Fed.R.Civ.P. 12(b)(6).

[4] The Court can take judicial notice of earlier lawsuits involving Plaintiff in considering whether the present suit is barred by the statute of limitations. *See, e.g.*, *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (rejecting an argument that "the statute-of-limitations defense was not properly raised in a motion to dismiss because the defense was not plain on the face of the complaint," because "the court [properly] took judicial notice of the dates on which certain actions were taken . . . in the earlier state-court litigation — facts readily ascertainable from the public court record"); *Arbogast v. Kansas*, 752 F. App'x 582, 584 n.1 (10th Cir. 2018); *Staehr v. Hartford Fin. Servs,* 547 F.3d 406, 425–26 (2d Cir. 2008).

Corrupt Organizations ("RICO") Act, the CFAA and defamation based on what he claimed was a "continuing and organized false smear campaign against him, including a plant of false facts in a publication by Dechert LLP and [one of its former partners] that El Omari was . . . involved in a billion-dollar fraud scheme involving his alleged employer."  Rosenthal Decl., Ex. M, ¶ *18.*  El Omari alleged that various individuals and entities assisting RAK violated the CFAA by sending him various spoofing emails in an attempt to access his computer.  *Id.*, Count IV.  That case was similarly dismissed.  *Id.*

El Omari filed a third lawsuit, this one against the International Criminal Police Organization ("INTERPOL"), *See El Omari v. INTERPOL*, No. 211458 (2nd Cir.  May 24, 2022). Plaintiff alleged that INTERPOL was liable to him for intentional infliction of emotional distress and lack of due process based on its issuance of a "red notice" stemming from his conviction for fraud in the UAE.  *Id.*  That lawsuit too was dismissed.  *Id.*

Notably, Plaintiff declined to include a New York State lawsuit that he brought on behalf of his company, *EMAAR RAK F.Z.E. v. RAK Tourism Investment F.Z.C.*, New York County Case No. 650864/2018, in which the Supreme Court of the State of New York, New York County recognized the validity of the criminal judgments against Plaintiff, stating: "given El Omari's criminal convictions, and the fact that all of his assets, including [EMAAR] RAK, are frozen and have been or will be seized, [EMAAR] RAK could not enforce the Emirates Judgment in Ras Al Khaimah, where it was rendered." (D.E. 59, p.3).

### B.    Plaintiff's Reliance on Other Allegations of Hacking

Plaintiff also alleges that he is not alone in alleging that computers were hacked in a scheme by RAK.  Complaint, ¶ 1. El Omari largely relies on a lawsuit by another individual, Farhad Azima, claiming he received similar spoofing emails by RAK.  See Complaint, ¶ 19.  In fact, Azima

himself filed four actions against either RAK, the Dechert firm or others assisting RAK.  These include a suit filed in the District of Columbia, s*ee See Azima v. RAK*, No. 16-cv-0948 (KBJ), Dkt. No. 1 (Complaint, filed 9/30/16); the United Kingdom, s*ee RAK Investment Authority v. Azima*, Counterclaim, No. HC-2016-002798, the Middle District of North Carolina, *see  Azima v. Del Rosso and Vital Management, Inc.*, M.D.N.C. No. 1:20-cv-00954, filed Oct. 15, 2020, and this jurisdiction, see *Azima v. Dechert, et al.,*  S.D.N.Y., No. 1:22-cv-08728 (filed Oct. 13, 2022).   As for Azima, after his suit in the District of Columbia was dismissed, the English Court ultimately ruled that Azima had been involved in bribery and fraud.  *RAK Investment Authority v. Azima* [2020] EWHC 1327 (Ch) [159, 246, 250, 381].  It also concluded that Plaintiff's testimony was "frequently inconsistent with the contemporaneous documents," "inherently implausible," and at times "untruthful."  *Id.* ¶ 70–71, 127.[5]

### C.    El Omari's New Claim at Issue

In addition to relying on Azima's lawsuits, Plaintiff's relies on information he received from a U.K. based firm, Stokoe Partnership Ltd. ("Stokoe"), which is representing other individuals convicted in RAK of various fraud schemes.  Based on information from Stokoe, Plaintiff alleges that Defendants instructed an Indian cybersecurity firm, CyberRoot Risk Advisory Private Ltd, to hack Plaintiff's computer, Compl., ¶ 32.  He alleges that a "tranche of emails" hacked from his computer, but  relating to an email account of his counsel, can be found on Defendants' Laptop, which is located in London.    See Compl., ¶ 45.

---

[5] The English Court subsequently ruled that  Azima could raise hacking as a defense to claims relating to fraud by Azima, although it declined to find that its earlier factual conclusions were erroneous. Azima's suit in the Middle District of North Carolina was dismissed as time-barred, except that allegations relating to publication of his trade secrets survived and is still pending. See, e.g.,  *Azima v. de Rosso*, No. 1:20CV954, D.E. 65 (M.D.N.C., Dec. 10, 2021).  Motions to dismiss Azima's suit in this District, which again raised broad allegations of hacking conspiracy by RAK, are currently pending.  *See Azima v. Dechert LLP*,  1:22-cv-08728 (PGG).

Plaintiff further alleges that Dechert and Defendants conspired to hack Plaintiff's emails by, among other things, attending meetings in New York, see Compl., ¶ 14, although no such meetings are identified in the Complaint.[6]  It is also alleged that Plaintiff's computer was hacked so that documents could be used by Dechert in litigation defending claims brought by Plaintiff, see Compl., ¶ 39, although no such documents are identified.

Allegations directed at CyberRoot rest almost entirely on the fact that payments were made by Defendants to CyberRoot, see Compl., ¶¶ 32-35, which was involved in projects having nothing to do with Plaintiff or any alleged hacking.  *See, e.g.,* del Rosso Decl., ¶ 53.3**.**  Plaintiffs also alleged that an individual named Aditya Jain received instructions from Defendants regarding hacking victims, which he then passed on to CyberRoot. There is no indication in the Complaint as to the source of those allegations, which are instead based on "information and belief."

### D.    Facts Relating to Plaintiff's Motion for a Preliminary Injunction

Plaintiff argues that a preliminary injunction is needed in light of the fact that data relating to his attorney may exist on a Laptop owned by Defendants.[7]  Plaintiff's counsel initially indicated his agreement to any procedure adopted by the Court in London, which ruled in favor of Defendants on an application to have the Laptop returned to them, see Rosenthal Ex. A, but when

---

[6] As reflected *infra*, Pt. I, personal jurisdiction and venue are lacking.

[7] The Court can also consider in connection with Plaintiff's motion for a preliminary injunction evidence adduced elsewhere, whether or not it is appropriately considered on a motion to dismiss. *See, e.g.*, See *Mullins v. City of New York*, 626 F.3d 4716 (2d Cir. 2010); ("We conclude that hearsay testimony is admissible to support the issuance of a preliminary injunction, and the district court did not abuse its discretion in [considering such evidence in ruling on the motion]"; *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd*., 822 F.3d 709, 725 (4th Cir. 2016), vacated on other grounds, 137 S. Ct. 1239 (2017)).  It is particularly appropriate for the Court to take judicial notice of proceedings in London since Plaintiff refers to those proceedings in his Complaint.  See Compl., ¶ 19.  *See, e.g.*, *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y. City Dep't of Educ*., 9 F.4th 91, 94 (2d Cir. 2021); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

asked to confirm that position in writing, he advised that he would only agree to have his own expert, Mr. Kiefer, review the contents of the Laptop to locate and remove the alleged "tranche of emails" relating to Plaintiff's counsel.   See Rosenthal Decl., Ex. B, C.  Plaintiff declined to intervene in the proceedings and ask the English court to modify the procedure agreed to by Defendants and adopted by the English Court.  See Rosenthal Decl., Ex. B, C.  Plaintiff instead announced that he would seek sanctions unless his own expert is given access to Defendants' computer, see Rosenthal Ex. F, which contains not only personal but privileged and confidential information belonging to Defendants.

### 1.      The London Laptop

As set forth above, possession of the Laptop was the subject of proceedings in London in which Defendants filed an application to have Stokoe return the Laptop to them. Ironically, while alleging that access to his emails constituted a violation of the CFAA,  see *id.*, ¶¶ 47-55, El Omari's suit is based on the fact that Stokoe obtained possession of the Laptop, and accessed it.  The Court ruled in favor of Defendants, finding that the Laptop had in fact been stolen, and had been turned over to Stokoe under suspicious circumstances.  The English Court ordered Stokoe to pay attorneys fees and costs to Defendants, and further, ordered Stokoe to provide an affidavit explaining its handling of the Laptop after it obtained possession.  *See* Rosenthal Decl., Ex. D.

The proceedings in London established that the Laptop had been left in London in February, 2020, prior to the onset of Covid, and without permission from either Defendant, was obtained by Stokoe.  See Rosenthal Decl., Ex. E ("del Rosso Statement"), ¶ 28.  Although Stokoe obviously knew that the Laptop belonged to an adverse party, Stokoe failed to notify Defendants' counsel that it was in possession of the Laptop, and instead held onto it for at least six months, during which time it had a computer consultant access the devices and supposedly determine that

emails relating to Plaintiff's counsel are contained on the device.  *See* del Rosso Statement, ¶ 39. Stokoe then invited others litigating against RAK to make claims relating to the Laptop before even notifying Defendants that it was in possession of the stolen Laptop.  *Id.*, ¶ 40.

El Omari contends that his counsel was notified in January, 2023 that the Laptop appeared to contain a tranche of emails from the account of his lawyer, Mr. Scott Moore. Complaint, ¶¶ 19-21.  Although the English Court held hearings as to the Laptop, neither Plaintiff nor his counsel appeared or took any part in those proceedings.

There has been no determination at this point that the Laptop does in fact contain material from El Omari's lawyer.  In fact, El Omari alleged that material on the laptop "was determined to be between March 2011 and May 2021."  Compl. ¶ 20.  Mr. del Rosso denied in the London proceedings having placed any of Moore's material on the laptop, which would have been impossible in light of the fact that the Laptop was not even in his possession after February, 2020, when he returned to the United States and left it in London. See del Rosso Statement, ¶ 28. [8]

Notwithstanding the suspicious circumstances surrounding Stokoe's handling of the Laptop, Defendants agreed during the proceedings in London that they would not remove the Laptop from the jurisdiction in London, where the Court considered claims relating to the Laptop, and that Defendants would retain an independent expert who would remove any of Plaintiff's data allegedly located on the Laptop, if any even exists.

---

[8] Plaintiff makes the extraordinary claim that that "Del Rosso does not dispute the existence of the subject email tranche on his Laptop, and has no explanation."  Pl. Mem. at 8.  Plaintiff fails to mention, however, that Del Rosso vigorously disputed having placed any of the alleged material on the device, and that, if the material is now on the Laptop, it was evidently placed there after the Laptop was no longer in his possession based on Plaintiff's allegations that material post-dated del Rosso leaving it in London by at least one year.

### 2.      Payments to Fact Witnesses and Reliance on Stolen Bank Statements

Plaintiff's request for a preliminary injunction and claims that the Laptop was used to hack Plaintiff depends almost entirely on allegations about CyberRoot. The Court can consider evidence adduced in other proceedings demonstrating the existence of a scheme to fabricate allegations as to CyberRoot based on bank records relating to CyberRoot, see Compl., ¶¶ 33-34, which in fact were stolen by Azima's agents.  Stokoe previously introduced the same payment history relied upon by Plaintiff  in this case when, on February 5, 2021 it sought discovery from Defendants pursuant to 28 U.S.C. §1782.  (see Rosenthal Decl., Ex. G,  (In re Application of Karam Al Sadeq, Misc. No., 1:21-mc-0006, D.E. 1 at 15).  Stokoe falsely alleged that it obtained the bank statements from "[a] whistleblower who is employed by CyberRoot and who has legitimate access to the company's bank account."  *Id.*   In fact, the theft of those bank records is currently being investigated by prosecutors in India based on the fact that those records had been stolen from CyberRoot's bank in India by an employee of that bank on or about June 30 or July 1, 2020. (See In re Application of Karam Al Sadeq, ECF 28 at 3, attached to Rosenthal Decl., Ex. H).

There is also evidence of repeated efforts to pay fact witnesses for incriminating evidence. Jain is similarly referenced in the Complaint.  *See* Compl., ¶¶ 10, 33. Even though he is a fact witness, he was paid by an investigator for those claiming that Defendants engaged in hacking various individuals.  See Rosenthal Decl., Ex. H at 19.  Another former CyberRoot employee, Vikash Pandey, was first threatened with a lawsuit, and then offered a bribe as part of a $500,000 "Consultancy Agreement." *See* Rosenthal Decl., Ex. I, ¶ 38.  Pandey rejected the "offer."  *Id.* Two other CyberRoot directors were similarly offered payment for testimony supporting claims that CyberRoot was involved in hacking, which they declined to accept.  See Rosenthal Decl., Ex. J. Another fact witness paid for supporting hacking claims is Cameron Findlay, who filed an

application under 28 U.S.C. § 1782 to depose Defendants based on the same stolen CyberRoot bank records. See Rosenthal Decl., Ex. K. As the English Court found while considering Findlay's testimony in another case, Findlay was paid over £ 1 million by the corporate entity believed by Defendants to be funding allegations of a hacking conspiracy. See Rosenthal Decl., Ex. K, ECF 11 at 6.

## ARGUMENT

### I.       STANDARD OF REVIEW AND BURDEN ON THE PLAINTIFF

The Plaintiff bears the burden of setting forth facts which, if true, would entitle them to the relief requested, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that a court need not accept as true conclusory allegations designed to fill the gaps in the complaint. *Plair v. City of New York*, 789 F.Supp.2d 459 (S.D.N.Y. 2011) (finding that Plaintiff's allegations . . . are conclusory and do not reach the requisite level of plausibility to survive under *Twombly* and *Iqbal); see also Trudeau v. FTC,* 456 F.3d 178, 193 (D.C. Cir. 2006) (rejecting "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint). Finally, speculation cannot be used to satisfy pleading standards. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Therefore, "[t]he plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001) (internal citations omitted), all of the essential elements of the statutory or common law causes of action are pled, and damages are proximately caused by Defendants' actions. *Iqbal*, 566 U.S. at 675-78. Plaintiff fails to satisfy that burden here. This is not a case where Plaintiff has simply relied on speculative assumptions and vague statements to show that there was a conspiracy to hack certain data and information. The Complaint should be dismissed in its entirety because the facts alleged, if true, fail to establish personal jurisdiction and

venue, affirmatively show that all claims are barred by the relevant statute of limitations, and fail under *Twombly* and *Iqbal*.

## II.  JURISDICTION IS LACKING AS TO DEFENDANTS VITAL AND DEL ROSSO

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see also Boland v. Fortis Constr. Co., LLC*, 796 F. Supp. 2d 80, 86 (D.D.C. 2011). The same considerations and burden apply to the venue inquiry. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir.2005)*; Whitaker, supra.*

Here, Plaintiff cannot meet his burden needed to sustain either personal jurisdiction or venue. Personal jurisdiction is not a "legal nicety" but rather is an "essential ingredient" of the Court's ability to hear a case.  *See Steel Co. v. Citizens for a Better Env't*, 532 U.S. 83, 101 (1998). The same is true for venue.  *See Gulf Ins. Co.,* 417 F.3d at 355.

### A.  Personal Jurisdiction as to Del Rosso and Vital Is Lacking

Defendant relies on two potential bases for asserting jurisdiction: (l) that Defendants made trips to New York and (2) that Defendants acted as agents of Dechert, which has offices in New York and is therefore subject to jurisdiction here.  See Compl., ¶ 14.  Neither conclusory allegation is sufficient to sustain personal jurisdiction as to either Vital or del Rosso.

#### 1.  Jurisdiction Does Not Exist Under the N.Y. Long-Arm Statute or the Due Process Clause Based on the Conclusory Allegation that Meetings Occurred Here.

A court may exercise general jurisdiction over a nonresident only in the "exceptional case" where the defendant's contacts are so systematic and continuous that the defendant is "at home" in

the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751, 761 n.19 (2014). Plaintiff admits that Vital and Del Rosso's homes are not in New York, stating that Del Rosso" lives and resides in Charlotte, North Carolina, Compl., ¶ 5, and is the owner of Vital, a company organized and based in North Carolina.  Compl. ¶ 6.

Nor can Plaintiff establish specific jurisdiction. "To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process*." See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1346 (D.C. Cir. 2000) (citations omitted). Plaintiff does not cite the New York long-arm statute, but that statute allows a New York court to exercise specific personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state. . . ." See N.Y. C.P.L.R. § 302(a *inter alia*)(1). There is no factual allegation that Del Rosso or Vital transacted any business within the state or entered into any contract to supply goods within the state.

Conclusory allegations that Del Rosso and Vital engaged in meetings in New York does not suffice to establish personal jurisdiction.   Personal jurisdiction must be based on something more than "random, fortuitous, or attenuated contacts." *Philpot v. Kos Media LLC*, No. 16-CV-1523, 2017 WL 2270248, at *9 (S.D.N.Y. Apr. 21, 2017) (internal citations omitted).   Here, the "contacts" are not even random; they are nonexistent.   The Complaint fails to set forth a single meeting which occurred in New York.

Instead of setting forth any such meetings, the Complaint alleges in conclusory fashion that Defendant del Rosso made "numerous trips to New York for personal meetings as part of his

wrongful activities."   *See* Compl., ¶ 15.   "Conclusory allegations showing the presence of jurisdiction, particularly those stated only upon 'information and belief,' are insufficient to establish that the court has personal jurisdiction over the defendant."   *Guo Jin v. EBI, Inc.*, No. 05-CV-4201, 2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008).

Although not referenced in his allegations directed to personal jurisdiction, Plaintiff alleges elsewhere in the Complaint that material hacked from his computer was used in proceedings in New York in his earlier litigation.   See Compl., ¶¶ 39, 58.   But much like his allegation that Defendants made trips to New York, see Compl., ¶ 15, there isn't a scintilla of evidence, allegation, or even speculation in the Complaint as to any such document which was used in the New York litigation.   Moreover, courts do not look to the place where an injury may have been felt based on the tortious conduct, but instead look to the "'original event' . . . 'where the first effect of the tort ... that ultimately produced the final economic injury' is located."   *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84-85 (2001).   Here, that is clearly not New York.

That conclusion, and the lack of personal jurisdiction, is even more clearly lacking when it is realized that this case is about alleged computer hacking.   In determining whether the acts giving rise to jurisdiction, courts look to where hackers are located, *see, e.g.*, *Azima v. Rak Inv. Auth.*, 305 F. Supp. 3d 149, 171 (D.D.C. 2018) (citing *Doe v. Fed. Democratic Republic of Eth.*, 851 F.3d 7, 10 (D.C. Cir. 2017), or alternatively, the "'placement of [a virus] on [the plaintiff's] computer" [which] injures the victim when he "open[s] the infected email attachment.'"   *Id.* (citation omitted). Accordingly, the hacking only "occurs inside" the relevant jurisdiction where the attachment is opened. *Id.* Here, no allegation is made that Plaintiff opened his computer in New York.

In fact, the hacking supposedly committed against Plaintiff at the direction of some Defendants, which forms the basis of the claims against Del Rosso and Vital, is alleged to have occurred outside

the United States, *see, e.g.*, Compl. ¶¶ 32-33. Plaintiff alleges that Del Rosso and Vital used individuals located in India to hack the computer owned by Plaintiff, who also lives in North Carolina. *Id.*

### 2.      Jurisdiction Does Not Exist Based on An Agency Theory

Equally unavailing is the notion that because others alleged to be co-conspirators, such as the Dechert law firm, had operations in New York, those contacts can be imputed to Del Rosso and Vital merely by – once again – offering conclusory allegations that they all conspired together.

Those allegations are simply insufficient to satisfy Plaintiff's pleading requirement. *See First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988) ("Conclusory statements . . . '[do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction.' . . . [T]he 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction." (citation omitted)).

The fact that Dechert, a global law firm, may fortuitously have an office in New York cannot confer jurisdiction on this Court as to Defendants since, as discussed above, there is no allegation that the tortious activity occurred within New York, or that principles of agency are even applicable.  In order for Dechert's role in  New York to offer personal jurisdiction as to Del Rosso and/or Vital, Dechert would have to have acted as their agent, and done so in New York. *See Assoc. Producers Ltd. v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 166 (D.D.C. 2014) (quoting *Smith v. Jenkins*, 452 A.2d 333, 335 (D.C. 1982)). "To establish an agency relationship for purposes of personal jurisdiction, a plaintiff must show that the alleged agent [acting in the jurisdiction], acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some control." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 318–19 (S.D.N.Y. 2009) (cleaned up).

14

Plaintiff has not even alleged facts which could arguably satisfy those requirements.  First, Plaintiff has failed to even allege that Del Rosso or Vital "knew [their] co-conspirator (Dechert) was carrying out acts in furtherance of the conspiracy in the forum." *Cockrum v. Donald Trump for President, Inc.*, 319 F. Supp. 3d 158 185-86 (D.D.C. 2018) (citation omitted).

Second, as shown above, the agent has to be operating within the jurisdiction at the direction of the non-resident principal.  Here, Plaintiff has alleged the opposite, namely that Dechert was the principal, and was operating in New York, while the Defendants (i.e., the agents) were acting outside the jurisdiction.  Third, Plaintiff has not even tried to allege that Vital and del Rosso controlled Dechert.   In fact, even if they had included such an allegation, they would have been required to support it with facts – not bald conclusions.  S*ee* *Hau Yin To*, 700 F. App'x at 68.

Moreover, even if jurisdiction existed under the statutory scheme, it must still satisfy constitutional safeguards, more particularly the Due Process Clause. To satisfy due process, Plaintiff must show as to Del Rosso and Vital that their "conduct and connection with the forum State are such that [they] should reasonably anticipate being haled into court there." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014) (quotation marks and citation omitted). The analysis turns on whether the defendant has purposefully availed himself of benefits of the forum state by establishing "minimum contacts," and whether the exercise of jurisdiction offends traditional notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Complaint offers no basis for concluding that Del Rosso or Vital have the requisite minimum contacts to satisfy due process. Because such contacts are lacking here, it would violate the Due Process Clause to require either of them to appear in this District and defend against Plaintiff's lawsuit.  Accordingly, dismissal is required.

### B.      Venue Is Improper in this District

As with personal jurisdiction, the plaintiff has the burden of demonstrating that venue is proper. *Gulf Ins. Co.,* 417 F.3d at 355.   Plaintiff cannot sustain that burden as none of the three possible grounds for asserting venue exist here.

More specifically, Plaintiff cannot establish venue under 28 U.S.C. § 1391(b)(1) in light of the fact that neither Del Rosso nor Vital reside in New York. *See Rankel v. Kabateck*, No. No. 12 CV 216(VB), 2013 WL 7161687 *3 (S.D.N.Y. Dec. 9, 2013). Similarly, venue does not exist under § 1391(b)(2), which allows a court to find venue as to "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." As demonstrated above, Plaintiff essentially concedes that venue is lacking in this jurisdiction by alleging that the hacking giving rise to Plaintiff's damages occurred outside both this District and indeed outside the United States. *See supra.*

Consequently, both personal jurisdiction and venue are lacking, requiring dismissal.

### III.     DISMISSAL IS APPROPRIATE BASED ON THE GOVERNING STATUTE OF LIMITATIONS

Both of Plaintiff's claims are barred by the governing statute of limitations.  Plaintiff's first claim, for a violation of the CFAA, 18 U.S.C. § 1030, is governed by a two-year statute of limitations.  See 18 U.S.C. 1030(g).  The claim alleging conversion is governed by North Carolina common law, which imposes a three-year statutory period for filing suit. See N.C. Stat. § 25-3-118.  In both cases, the relevant statutory period for bringing an action has expired.

Plaintiff does not dispute that if anyone hacked his data, it would have occurred more than three years ago.   In fact, he alleges in his 2023 Complaint that his "investigation determined the hacking of an email account of El Omari occurred on or about January 12, 2017."  Compl., ¶ 20. For that reason, Plaintiff falls back on the argument that even though the intrusion into his account

occurred more than three years ago, the cause of action did not accrue until 2023, after he was told that a tranche of his lawyers' emails allegedly existed on the Laptop.  See Compl., ¶ 1.

However, under both the CFAA and a claim for conversion under North Carolina law, it is not necessary for a plaintiff to have known all of the facts surrounding his claim for the statute to begin running.  As to the CFAA, Plaintiff relies on the fact that the statute begins running when the hacking occurs, or alternatively, when the plaintiff has notice of the "damage" to his computer, *see* 1030(g), which is specifically defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

In fact, Plaintiff admits in his own complaint that more than three years before filing the instant suit, he filed an earlier lawsuit alleging the fraudulent use of computer systems as part of a smear campaign against him by RAK.  See Compl., ¶ 18 (referencing *El Omari v. Buchanan*, No. 20-cv-2601, filed May 4, 2020).  Significantly, in that earlier suit, El Omari alleged – just as he does in this case – a claim based also on a violation of the CFAA.   See *El Omari v. Buchanan*, Rosenthal Decl., Ex. M, Ct., IV.  Plaintiff also alleged, previously, that the hacking campaign resulted in those assisting RAK being able to access his computer, and that Plaintiff suffered the same damage now alleged here, namely the loss of secrecy and confidentiality of his data.  See Compl., ¶ 43 (alleging that Plaintiff "suffered the complete loss of valuable confidentiality of the data in the attorney–client communication").

It is equally clear that a claim for conversion is time-barred.  Defendant himself admits that the phishing emails allegedly used to hack his data occurred in 2016 and 2017.  See Compl., ¶ 23. Plaintiff does not even try to allege any conduct constituting concealment in an effort argue that the statute of limitations governing the conversion claim was tolled.  See, e.g., *Azima v. de Rosso*, No. 1:20CV954 (M.D.N.C., Dec. 10, 2021), D.E. 65 at 12 (rejecting concealment defense to the

statute of limitations as to Azima's claims based on the absence of any allegation that plaintiff relied on conduct by defendant intended to conceal hacking efforts).

Plaintiff cannot even argue that he was unaware until recently of allegations made by others directed at Defendants Del Rosso or Vital.  Plaintiff admits being aware that Defendants were supposedly involved in the scheme by RAK to go after or "target" those perceived as hostile to RAK.  More specifically, El Omari alleged in his earlier suit that the "targeting [of[ EL OMARI" on behalf of the ruler of RAK was similar to allegations filed as long ago as November 12, 2019, when Azima alleged in proceedings in England that RAK retained others "to 'target' and 'go after'" Azima and others  perceived as antagonistic to RAK.  See Rosenthal Decl., Ex. M, *El Omari v. Buchanan*, D.E. 28, ¶ 27.  El Omari went so far as to allege that Del Rosso and Vital were instrumental in that scheme, contending that they were tasked with obtaining information in August 2016, which would have been useful in connection with litigation involving RAK.  *Id.*

Consequently, the entire complaint is deficient and should be dismissed.  Because all three causes of action (for violation of the CFAA, conspiracy to violate the CFAA and conversion), are time barred, dismissal is appropriate.

## IV. PLAINTIFF'S COMPLAINT FAILS TO SATISFY *TWOMBLY* AND *IQBAL* BY RELYING ON SPECULATION, SURMISE AND CONJECTURE

This case should be dismissed, alternatively, based on the failure to comply with *Twombly* and *Iqbal*.  The allegation that Defendants hacked Plaintiff's data is, at best, based on speculation and conjecture, which cannot survive under Rule 12(b).

Plaintiff's theory can be summed up as follows:   (1) he received three phishing emails in 2017, (2) Defendants hired a firm which had been accused in other cases of hacking,  (3) an individual was given Plaintiff's name as a hacking target, and (4) data was found on a computer stolen from Defendants in London which allegedly included "a backup copy of emails containing

the email address of El Omari's undersigned counsel (smm@milopc.com)," Compl., ¶ 19.  None of those assumptions, individually or when considered together, support that conclusion.  We deal with each of them below.

### A.    The Claim Under North Carolina Law Is Deficient

As a preliminary matter, Plaintiff does not even set forth allegations sufficient to sustain a claim of conversion under North Carolina law.  State law requires a showing that there was: "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Estate of Graham v. Morrison*, 168 N.C. App. 368, 371 (2005). "At its core, conversion 'is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . .'" *Tai Sports, Inc. v. Hall*, 2012 N.C.B.C. 62, ¶ 108 (N.C. Super. Ct. Dec. 28, 2012) (quoting *Lake Mary L.P. v. Johnston*, 145 N.C. App. 525, 532 (2001)).  There is no allegation that Plaintiff was deprived of his emails, only that Defendants was able to access them.

### B.    The Conclusory Allegations Relating to the CFAA are Deficient

The Complaint also fails as to the claims under the CFAA.  The most that can be said of the first fact relied upon by Plaintiff is that he was subjected to what is an unfortunately common occurrence in today's world. The Complaint alleges that Plaintiff received a total of three phishing emails, notwithstanding the fact that his Complaint deals with events spanning a six-year period, ranging from December, 2016, when he received the first of three phishing emails, see Compl., ¶ 23, to January 2023, when he was notified that a computer owned by Defendants turned up in London. *Id.*, ¶ 23.   The Court can take judicial notice of the overwhelming number of government and non-government reports warning that phishing emails are a common occurrence, see, e.g., FBI Report, Spoofing and Phishing  available at https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/spoofing-and-phishing; FTC, "How To

Recognize and Avoid Phishing Scams," available at https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams   One respected cybersecurity company, Symantec, has calculated that one out of every 1053 to 1440 emails constitutes a phishing attempt.   See Symantec Intelligence Report (Jan. 2014), available at intelligence-report-jan-14-en (broadcom.com), available at https://docs.broadcom.com/doc/intelligence-report-jan-14-en, annexed to Rosenthal Decl., Ex. L.   Accordingly, the fact that Plaintiff received three phishing emails more than six years ago does not show that Defendants were responsible for hacking his computer.

Second, Plaintiff's allegations connecting CyberRoot to the alleged hacking of Plaintiff rests solely on "information and belief" and reflecting vague accusations prompted by parties adverse to Defendants.   Plaintiff alleges in conclusory fashion that "on information and belief," CyberRoot hacked individuals at Defendants' direction, see Compl., ¶ 33, and then goes on to stack additional "information and belief" on top of that conclusory allegation, alleging that "upon information and belief" Defendants gave Plaintiff's name to someone purportedly working with CyberRoot (Aditya Jain).   *Id.*   The mere payment by Defendants to CyberRoot for unrelated services cannot breathe life into Plaintiff's conclusory allegations.

While it is true that allegations on information and belief may under appropriate circumstance withstand scrutiny on a Rule 12(b) motion, those circumstances are not present here. The Second Circuit has held in *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 121 (2d Cir. 2010), that "[t]he *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal,* 129 S.Ct. at 1953, does not prevent a plaintiff from "pleading facts alleged 'upon information and belief'" where the facts are peculiarly within the possession and control of the defendant, *see, e.g., Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir.2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal,* 129 S.Ct. at 1949 ("A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Here, other than the bald conclusions stated in the Complaint, no "factual content" is alleged with which to determine whether Plaintiff's conclusions are plausible.  See *J & J Sports Prods., Inc. v. Daley*, No. 06-CV-0238, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007) ("'conclusory allegations based on information and belief' are insufficient").

In considering whether Plaintiff has shown a likelihood of success, the Court can take judicial notice of facts established in other cases demonstrating that allegations about CyberRoot and Jain have been fabricated.  See, *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016), vacated on other grounds, 137 S. Ct. 1239 (2017)).  Simply hiring CyberRoot cannot support the conclusion that Defendants hacked Plaintiff's computer.

As to Jain, the allegations lack the sort of detail needed to justify relying on "information and belief."    There can be no claim that information from Jain is "peculiarly within the possession or control" of Defendants, justifying relying on conclusory allegations based on "information and belief."  The opposite is true.  As shown *infra*, Jain has been paid by an investigator representing Azima, *see infra*, and an accountant working for Jain's company has also been alleged to have been involved in the theft of CyberRoot's bank records by Azima's agents, which is now under investigation by prosecutors in India.   See Rosenthal Decl., Ex. G (Ahuja Decl.).

Given Jain's obvious loyalties, one would expect that if Plaintiff's hacking allegations were true, Plaintiff would have been able to allege the basic facts reflecting what action was taken to hack Plaintiff's computer, including (l) how a tranche of emails from Mr. Moore' account ended up on Defendants' Laptop, especially since Mr. Moore denies that his computer was hacked, and (2) some portion of that tranche of emails are dated after the laptop had been stolen from

Defendants. *See supra*. Other than the allegation that Jain was given Plaintiff's name, there is no "factual content" as to actions taken by Jain or CyberRoot.

The last allegation offered to support the conclusion that Defendants hacked Plaintiff is that a "tranche of El Omari's attorney's emails were discovered on a Laptop in London" belonging to Defendants. Compl., ¶ 45. First, there has been no confirmation that those emails actually exist on the Laptop, and second, if they do exist, how they came to be placed there. Plaintiff's allegations about the Laptop are inherently contradictory. Plaintiff himself alleges that "El Omari's attorney," Mr. Scott Michael Moore, was not hacked, see Moore Decl., ¶ 11, making it impossible to understand how the Laptop could contain Mr. Moore's email account. Nor does Plaintiff take issue with Del Rosso's filed witness statement in the proceeding in London, where he indicated that the last time the laptop was in his possession was February, 2020, see del Rosso Wit. Statement, ¶ 28, which would have made it impossible to have downloaded Mr. Moore's emails in light of the allegation in the Complaint that emails on the Laptop included those dated as late as May, 2021. See Compl., ¶ 36. The English Court found that the story about how the Laptop had been handled after it was stolen was "a pretty extraordinary sequence of events," and "quite amazing actually." Rosenthal Decl., Ex. D (Tr. at 187-188).

Consequently, the "information" offered by Plaintiff to support his claim is not only conclusory in nature, it is inherently contradictory. The most that can be said is that (l) a tranche of emails allegedly belonging to Plaintiff's counsel may have been found on the Laptop; (2) no one hacked Plaintiff's counsel, and (3) that the tranche of emails may have been placed there after the Laptop was no longer in Defendants' possession, and while it was in Stokoe's possession under highly suspicious circumstances. Dismissal is therefore required.

## V.   IF THE CASE IS NOT DISMISSED IN ITS ENTIRETY, THE COURT SHOULD DENY THE REQUEST FOR A PRELIMINARY INJUNCTION.

Even if the Court were to find that dismissal is premature, it should deny the request for a preliminary injunction.   As explained below, Plaintiff cannot show that he has a likelihood of success on the merits of this case – his fourth attempt to sue those perceived as trying to "target" him as part of a scheme.   Moreover, no irreparable harm will occur with a preliminary injunction.

Defendants have already told Plaintiff's counsel that all parties have an obligation to abide by a litigation hold, and that, for the avoidance of any doubt, Defendants specifically agree that a litigation hold is in place in this case.   See Rosenthal Decl., Ex. A-C.   Second, Plaintiff's counsel has been further told that an independent consultant will determine if the alleged tranche of emails relating to Mr. Moore in fact exist, and if so, will remove them from the Laptop and provide them to Plaintiff. *See supra.*   Accordingly, nothing is gained from insisting on a preliminary injunction.

A preliminary injunction is inappropriate for other reasons.   Plaintiff ignores the heavy burden he carries in seeking a preliminary injunction.   "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).   "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *North American Soccer League, LLC v. United States Soccer Federation, Inc.,* 883 F.3d 32, 37 (2d Cir. 2018); *see also DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

Plaintiff can meet none of these three requirements.

### A.   Plaintiff Cannot Show that He is Likely to Succeed on the Merits of His Complaint

Plaintiff must be able not only to show a likelihood of prevailing on his own claim, but also, he must be able to show a likelihood of overcoming any affirmative defenses.  See, e.g., *Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Co-op Productions, Inc.*, 479 F.Supp. 351, (N.D. Ga. 1979), citing *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974) ("On a motion for preliminary injunction, Plaintiffs must demonstrate a likelihood of success on the merits at trial as to asserted affirmative defenses, as well as to the elements of Plaintiffs' prima facie case.").   As far as the affirmative defenses discussed above, even if the Court denies the motion to dismiss at this stage as premature, Plaintiff will likely be unable to show after discovery that his Complaint would survive the lack of personal jurisdiction and the fact that it is time-barred.  *See supra,* Pt. II.

### 1.   Conduct by Azima and Stokoe – Relied Upon by Plaintiff In This Case -- Render It Even Less Likely That Plaintiff Will Prevail in this Case.

Plaintiff's allegations relating to the stolen CyberRoot bank statements and Laptop are key to Plaintiff's claims.  There is no dispute that both the Laptop and bank records were stolen, and further, that Stokoe was involved in acquiring both items of evidence.  As to the former, this theft is now being investigated by Indian prosecutors.  See Rosenthal Dec., Ex. H.  Nor is there any dispute that Stokoe misrepresented to the Court in the Middle District of North Carolina that they had been provided by a whistleblower with access to the documents.  *Id.*  Plaintiff has not been able to muster any credible evidence that the payments to CyberRoot were for hacking, as opposed to other legitimate projects having nothing to do with Plaintiff.

The Laptop, which the English Court found had been similarly stolen and which was in Stokoe's possession, also lends no support to Plaintiff's claims.  It is consistent with a suspicious set of events involving Azima and Stokoe.  In addition to being in possession of stolen goods belonging to Defendants, Stokoe has no explanation for how data post-dating Defendant's

possession of the Laptop came to be located on the device.   The English Court was also unimpressed with the story about how Stokoe needed to hire Diligence – a computer expert that has been publicly accused of instructing Aditya Jain to hack emails from a Dechert former partner – to access the device. See Rosenthal Decl. Ex. N, ¶ 84.   As the court put the matter, Stokoe's handling of the Laptop was "quite amazing actually."  Rosenthal Decl., Ex. D at 188.

### 2. Plaintiff Cannot Rely on Allegations Relating to Aditya Jain in Light of the Incontrovertible Evidence that Those Making Hacking Claims Were Engaging in the Illegal and Unethical Practice of Paying Fact Witnesses, including Jain

Plaintiff also cannot show a likelihood that he will succeed given the evidence on which he is relying. Plaintiff's claim is based on allegations by other individuals who were similarly convicted of crimes in the UAE, or found by the Court in England to have engaged in a massive fraud, such as Azima.  *See supra.*  As demonstrated above, the "evidence" relied upon by those individuals was stolen or in several cases obtained through illegal and unethical payments to fact witnesses for offering false statements alleging CyberRoot's involvement in hacking.   Any notion that Plaintiff is likely to succeed at trial in his claims must take into account that his entire case relies on such illegal and unethical conduct that was designed to frame Defendants.

The sole witness identified in the Complaint who could allegedly tie CyberRoot to hacking of Plaintiff's computer is Aditya Jain.   See Compl., ¶ 10. Even though Jain has yet to file a declaration or affidavit in any proceeding attesting to allegations that Defendants or CyberRoot hacked anyone's computer, there is indisputable evidence that he has received substantial sums from an investigator of Azima, while Azima's suit was pending against Defendants.  According to bank records relating to that investigator Jain was repeatedly paid by those alleging a hacking conspiracy.  See Rosenthal Decl., Ex. H,  ECF p.19.   Based on the timing of those payments, Jain apparently was instrumental in obtaining CyberRoot's stolen bank statements and attempting to induce others to provide false testimony to support hacking claims. *Id.*

The Court can also consider the fact that the payments to Jain are part of a clear pattern in which other fact witnesses were offered substantial funds to falsely implicate CyberRoot and Defendants in alleged hacking.   *See* Rosenthal Decl., Ex. I (consultancy agreement with Vikash Pandey, worth $500,000, for, inter alia, providing witness statements); *id.,* Ex. J (consultancy agreement with Ahuja and Bisht offering $500 per hour for, inter alia, providing sworn declarations and executing a settlement agreement admitting hacking); Ex. K, ECF at 6 payment of over £1 million to Cameron Findlay by entity believed to be funding Azima).

Where, as here, fact witnesses are not being paid for normal expenses, but explicitly for their testimony or submitting affidavits swearing to facts, authorities regard such payments as unethical, if not illegal,   *See, e.g*., Model Rule of Professional Conduct § 3.4 (warning against, inter alia, improper inducements to witnesses); *In re Kien*, 372 N.E. 2d 376, 379 (Ill. 1977) (attorney suspended from practice of law for paying a fact witness for "truthful" testimony); accord North Carolina Rule of Professional Conduct 3.4.   Additional facts make the string of offers of payment in this case particularly disturbing, such as paying fact witnesses only after threatening those individuals with lawsuits, despite their denials of wrongdoing, *see New York v. Solvent Chemical Co.*, at 290 (noting that the "litigation consultant" had been retained only after a subpoena had issued for his testimony), and requiring confidentiality.   *Id.* (finding particularly disturbing that payment to fact witness was undisclosed).

Such conduct, as demonstrated above, is both unethical and illegal, and calls into question the veracity of the individuals offering and receiving the payment.   *See New York v. Solvent Chemical Co*., 166 F.R.D. 284, 289 (W.D.N.Y. 1996) (finding that payments to fact witnesses "threatened to undermine the integrity of the adversary process"); *Caldwell v. Cablevision Sys. Corp.*, 925 N.Y.S.2d 103, 106 (N.Y.App.Div.2011) (the "giving of testimony as to facts within

one's knowledge is a matter of public duty" and an " 'inherent burden of citizenship' which requires

no compensation;" to compensate otherwise would be " 'subversive of the orderly and efficient

administration of justice', even where a witness is contracted to tell the truth, rather than to testify

falsely") (citations omitted).  Payments to fact witnesses for their testimony "cast[s] a cloud over

the legitimacy of that testimony."  *Rocheux Int'l of New Jersey, Inc. v. U.S. Merchants Financial

Group, Inc.*, Civ. No. 06-6147, 2009 WL 3246837, at *4 (D.N.J. Oct. 5, 2009), and that courts

must be vigilant "to prevent this suspect evidence from contaminating future proceedings." *Id. See

also Ward v. Nierlich,* No. 99-14227-civ, 2006 WL 5412626, at *3 (S.D. Fla. Sept. 20, 2006) ("the

Court finds that Plaintiffs and their counsel have in fact corrupted the judicial process and

committed a fraud on this Court by paying defense witnesses for their testimony"); *Golden Door

Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assoc.*, 865 F.Supp. 1516, 1524-1526

(S.D. Fla. 1994) ("The Court finds that this conduct was egregious and constituted willful and

repetitive violations of Rule 4–3.4(b) of the Rules of Professional Conduct," and that the payment

to fact witnesses "unquestionably violated the very heart of the integrity of the justice system"),

*rev'd in part on other grounds,* 117 F.3d 1328, 1335 n.2 (11th Cir.1997).

Accordingly, any representation in the Complaint that Jain can or will verify CyberRoot's

conduct in hacking Plaintiff's computer should be disregarded, leaving the Complaint devoid of

any evidence with which to sustain Plaintiff's claim.  All that remains is that Plaintiff was subject

to three phishing emails over five years ago, Defendants hired a government-certified

cybersecurity and information technology company in connection with tasks unrelated to any

hacking activities, and Plaintiff's extraordinary claim that data relating to Plaintiff's counsel was

found on the Laptop, even though it post-dated the theft of the Laptop.

Finally, it is no answer to say that instead of looking to facts relating to payments to fact witnesses and other illegal conduct, and whether there is a likelihood of success on the merits of Plaintiff's claim, the Court should impose a preliminary injunction because the "balance of hardships" favors imposing a preliminary injunction in lieu of the ordinary litigation hold procedure.   See Pl. Mem. at 16.   As demonstrated below, the "balance of hardships" is no substitute for examining the merits of a claim, and the critical element required to be shown for a preliminary injunction to issue, namely that he will suffer an irreparable injury, as explained below. *See infra*.

### B.    Plaintiff Cannot Show Any Irreparable Injury Unless an Injunction Issues

As stated above, in order to satisfy the second prong of the test for injunctive relief, a party must show that they would suffer irreparable injury if the injunction is not granted.  See Pl. Mem. at 10.   Plaintiff cannot meet that burden.  In fact, "'[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (summary order) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009)).  Moreover, "a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that 'absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" *Bisnews AFE (Thailand)*, 437 Fed. App'x at 58 (quoting *Faiveley*, 559 F.3d at 118); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction...").  Irreparable injury also requires a showing that "the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." *Garcia*, *supra* (citations omitted)).

Here, the only thing that Plaintiff alleges is injury which is highly speculative in nature and highly unlikely to materialize.  Plaintiff counsel has already agreed that the resolution adopted by the English Court was acceptable, namely that Defendants would agree to have an independent consultant eliminate from the device any data or information constituting the emails alleged to exist, eliminating any prejudice or harm to El Omari.  Plaintiff, on the other hand, takes the position that he is entitled to have the Court adopt a procedure at odds with the ruling by the English Court *See supra.*

It is equally specious to argue that the extraordinary remedy of an injunction is necessary to avoid Defendants deleting or destroying evidence currently in their possession, other than on the Laptop, which would be relevant to El Omari's claims.   As an initial matter, all parties (including Plaintiff) have an obligation to impose a litigation hold once litigation has ensued.  See, e.g., *Zubulake v. UBS Warburg*, 2020 FRD 212, 218 (S.D.N.Y. 2003).   Defendants have already agreed to a litigation hold, and beyond that, have already gone on record in disputing that any hacking occurred.   In short, even though a litigation hold exists, it is highly unlikely that they are (or ever were) in possession of any hacked data.

And even if one were to indulge Plaintiff in the assumption that evidence will be lost or destroyed notwithstanding a litigation hold, he fails to explain why ordinary remedies available for such conduct, including the possibility of damages, would not suffice.  Plaintiff is no different than any other Plaintiff who is desirous of having a litigation hold in place.

C.   **Plaintiff Has Not Even Tried to Allege that a Preliminary Injunction Is In the Public Interest**

Plaintiff has not even attempted to show why an injunction is in the public interest – the third prong of the test for such relief.

## CONCLUSION

El Omari's entire Complaint should be dismissed with prejudice. In the alternative, the

motion for a preliminary injunction should be denied.


Dated:  August 25, 2023                    Respectfully submitted,


                                           By: */s/ Samuel Rosenthal*
                                           Samuel Rosenthal, Esq.
                                           Lisa A. Herbert, Esq.
                                           Nelson Mullins Riley & Scarborough LLP
                                           330 Madison Avenue, 27th Floor
                                           New York, New York 10017
                                           Tel:     212.413.9058
                                           Fax:     646.428.2610
                                           sam.rosenthal@nelsonmullins.com
                                           lisa.herbert@nelsonmullins.com

                                           *Counsel for Nicholas Del Rosso and Vital*
                                           *Management*