UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OUSSAMA EL OMARI,<br><br> Plaintiff,<br>v.<br><br>DECHERT LLP,<br>NICHOLAS PAUL DEL ROSSO, and VITAL MANAGEMENT SERVICES, INC.,<br><br> Defendants. | Civil Action No. 23-cv-04607 (LAK) (OTW)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DECHERT LLP'S MOTION TO DISMISS**

Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

Carmen Iguina González*
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Tel: (212) 763-0883
Fax: (212) 564-0883
ciguinagonzalez@kaplanhecker.com

 *Admitted pro hac vice

*Attorneys for Defendant Dechert LLP*

October 25, 2023

# TABLE OF CONTENTS

<div align="right"><u>**Page**</u></div>

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 1

    I.    The Complaint Fails to Plead a Claim Under the CFAA ............................................. 1

        A.    The Complaint Fails to Plead Actionable "Loss" or "Damage" Under the CFAA .................................................................................................................. 1

        B.    The Complaint Fails to Plead Dechert's Involvement ..................................... 5

    II.    The Complaint Fails to Plead a Claim for a Conspiracy to Violate the CFAA ............ 5

    III.    Plaintiff's Conversion Claim in Barred by the Statute of Limitations ......................... 6

        A.    The Claim Accrued When the Conversion Occurred, Not When Discovered . 6

        B.    Equitable Estoppel Does Not Bar Assertion of a Statute of Limitations Defense ................................................................................................................ 8

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.V. ex. rel. Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ................................................................................................ 2

*Addison Whitney, LLC v. Cashion*,
    2017 WL 2506604 (N.C. Super. June 9, 2017) ..................................................................... 7

*Better Holdco, Inc. v. Beeline Loans*,
    2021 WL 3173736 (S.D.N.Y. July 26, 2021) ................................................................... 3, 4

*Bridgetree, Inc. v. Red F Mktg. LLC*,
    2013 WL 443698 (W.D.N.C. Feb. 5, 2013) ......................................................................... 7

*Chisum v. Campagna*,
    376 N.C. 680 (2021) ............................................................................................................ 8

*Christenbury Eye Ctr., P.A. v. Medflow, Inc.*,
    370 N.C. 1 (2017) ................................................................................................................ 8

*Dreni v. PrinterOn America Corp.*,
    486 F. Supp. 3d 712 (S.D.N.Y. 2020) .............................................................................. 1, 2

*Eastpointe Hum. Servs. v. N. C. Dep't of Health & Hum. Servs.*,
    2022 WL 2439157 (N.C. Ct. App. July 5, 2022) ................................................................. 8

*El Bey v. Stamp*,
    2005 WL 8174036 (W.D.N.C. Jan. 14, 2005) ................................................................... 10

*Eley v. Mid/East Acceptance Corp. of N.C.*,
    171 N.C. App. 368 (Ct. App. 2005) ..................................................................................... 7

*Espire Ads LLC v. TAPP Influencers Corp.*,
    2023 WL 1968025 (S.D.N.Y. Feb. 13, 2023) ...................................................................... 5

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011) .............................................................................. 1, 3

*First Invs. Corp. v. Citizens Bank, Inc.*,
    757 F. Supp. 687 (W.D.N.C. 1991) ..................................................................................... 8

*Friedland v. Gales*,
    131 N.C. App. 802 (Ct. App. 1998) ................................................................................ 9, 10

*Honeycutt v. Weaver*,
    257 N.C. App. 599 (Ct. App. 2018) .................................................................................. 6

*Hyo Jung v. Chorus Music Studio, Inc.*,
    2014 WL 4493795 (S.D.N.Y. Sept. 11, 2014) ................................................................... 5

*In re Apple & AT&TM Antitrust Litig.*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) ............................................................................ 2

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
    83 F. Supp. 3d 501 (S.D.N.Y. 2015) ................................................................................. 4

*Massre v. Bibiyan*,
    2014 WL 2722849 (S.D.N.Y. June 16, 2014) ................................................................... 4

*N.C. State Bar v. Gilbert*,
    2006 WL 539367 (N.C. Ct. App. Mar. 7, 2006) ................................................................ 9

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ............................................................................ 5, 6

*Reis, Inc. v. Lennar Corp.*,
    2016 WL 3702736 (S.D.N.Y July 5, 2016) ....................................................................... 4

*Salmony v. Bank of Am. Corp.*,
    2013 WL 3770688 (N.C. Ct. App. July 16, 2013) ........................................................ 9, 10

*Stratton v. Royal Bank of Can.*,
    211 N.C. App. 78 (Ct. App. 2011) ..................................................................................... 7

*Trademotion, LLC v. Marketcliq, Inc.*,
    857 F. Supp. 2d 1285 (M.D. Fla. 2012) ............................................................................ 5

*Trana Discovery, Inc. v. S. Rsch. Inst.*,
    2014 WL 5460611 (E.D.N.C. Oct. 27, 2014) ............................................................... 9, 10

*Tyco Int'l v. John Does*,
    2003 WL 23374767 (S.D.N.Y. Aug. 29, 2003) .................................................................. 4

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) ...................................................................................................... 2

*White v. Consol. Plan., Inc.*,
    166 N.C. App. 283 (Ct. App. 2004) ................................................................................... 8

**STATUTES**

18 U.S.C. § 1030 ............................................................................................................. 1, 2, 3, 4, 5

N.C. Gen. Stat. § 1–52 ............................................................................................................. 6

As Defendant Dechert LLP ("Dechert") showed in its Motion to Dismiss ("Motion" or "Mot."), Plaintiff's fourth litigation in seven years arising from his former employment with an instrumentality of Ras al Khaimah ("RAK") should meet the same fate as his previous attempts: dismissal at the pleading stage. The Complaint does not plead a substantive violation of the Computer Fraud and Abuse Act ("CFAA") because it neither pleads a "loss" or "damage" that is actionable under the statute, nor alleges that Dechert was involved in the hacking. Mot. at 8-13. And the CFAA conspiracy claim fails because the Complaint did not allege the necessary agreement between Dechert and Defendant Nicholas Del Rosso. *Id.* at 14-15. Finally, Plaintiff's claim for conversion under North Carolina law is plainly time barred. *Id.* at 17.

In his Opposition ("Opposition" or "Opp."), Plaintiff fails to engage with the wall of caselaw that Dechert cited in its Motion in support of dismissal; he simply ignores it. Plaintiff instead rehashes the deficient allegations of the Complaint and cites to inapplicable caselaw and random websites—he cites to IBM's website rather than addressing the Supreme Court's holdings related to CFAA claims, and he relies on breach of contract cases on the "discovery rule" rather than the conversion cases applicable here. *See* Opp. at 7, 16. The Opposition thus only confirms that Plaintiff's claims should be dismissed with prejudice.

## ARGUMENT

### I. The Complaint Fails to Plead a Claim Under the CFAA

#### A. The Complaint Fails to Plead Actionable "Loss" or "Damage" Under the CFAA

To sustain a claim under the CFAA, a plaintiff must allege "damage" or "loss" that falls within the CFAA's narrow definition of those terms. *See, e.g.*, *Dreni v. PrinterOn America Corp.*, 486 F. Supp. 3d 712, 735-36 (S.D.N.Y. 2020).[1] The Complaint here alleges three forms of

---

[1] Indeed, under the provision of the CFAA alleged by Plaintiff, he must allege both "loss" *and* "damage." *See Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 640 (S.D.N.Y. 2011). Plaintiff

1

purported damage or loss: (1) "legal fees and costs," Compl. ¶ 50; (2) "forensic computer investigation costs related to investigating, assessing the scope of the hacking, and seeking to restore the complete loss of confidentiality of the emails," *id.*; and (3) the "loss of the valuable confidentiality of the data in the attorney-client communication emails which relate to El Omari's NY litigation," *id.* ¶ 52. But none of these three purported forms of loss or damage meet the statutory requirements to sustain a CFAA claim. As the Supreme Court recently made clear, the CFAA focuses only "on technological harms—such as the corruption of files—of the type unauthorized users caused to computer systems and data." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (reversing conviction for violation of CFAA where defendant "did not impair the 'integrity or availability' of data, nor did it otherwise harm the database system itself").

*First*, with respect to "legal fees," Plaintiff argues that "his attorney fees and costs in this action are recoverable losses" under the CFAA because "[t]he cost of obtaining injunctive relief in this case" involves the "cost of responding to an offense and restoring the information to its condition prior to the offense." Opp. at 14. But as described in the Motion, this Court has repeatedly held that legal fees do not fall within the scope of CFAA's narrow definition of "loss" or "damage." *See, e.g.*, *Dreni*, 486 F. Supp. 3d at 736 (holding that "litigation expenses" are "too far removed from the forensic assessment to constitute 'losses' under the CFAA"; collecting cases holding same). The Opposition simply ignores this caselaw. Instead, it cites to out-of-circuit cases that say nothing about legal fees. *See* Opp. at 14 (citing *A.V. ex. rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 645-46 (4th Cir. 2009) (holding CFAA damages include "consequential" damages); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) (holding plaintiff may aggregate individual damages to reach $5,000 threshold)). Those cases have

---

fails to allege either.

no bearing here.

*Second,* with respect to the purported "loss of valuable confidentiality of the data," Compl. ¶ 52, Plaintiff asserts that the existence of a copy of his data on a laptop unavailable to him "impairs" his "use of the data by making it unavailable," Opp. at 15-16, and argues that this meets the definition of damage, which includes "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8). But this nonsensical theory contravenes basic logic—if this were true, any time a copy of data was made and not immediately available to the original owner, there would be an "impairment" of the data. For example, sending an attachment by email would "impair" the original data by creating a copy now unavailable to the sender. This is, of course, not the definition of "impair," and Plaintiff does not (and cannot) cite any caselaw in support of his theory. To the contrary, courts have rejected the argument that the mere copying of data constitutes "impairment" for the purposes of the CFAA. *See Better Holdco, Inc. v. Beeline Loans*, 2021 WL 3173736, at *4 (S.D.N.Y. July 26, 2021) (dismissing CFAA claim where plaintiff "allege[d] only that [defendant] downloaded and copied … data," not "that it lost service or access to its data, or that its systems were otherwise harmed"). Again ignoring the applicable caselaw, the Opposition cites instead to a case in which a CFAA claim was *dismissed*, but where the Court held that an ISP's "throttling" of data and transmission of "reset packets" to plaintiffs' computers inhibited use of the plaintiff's software—a clear "impairment" that has no application to the allegation of data-copying here. *See Fink*, 810 F. Supp. 2d at 641-42.

*Third*, with respect to Plaintiff's purported "forensic computer investigation costs," Compl. ¶ 50, Plaintiff argues only that he "has shown covered losses and damages, and second, the investigation was pleaded to directly involve those losses and damages." Opp. at 15. But as set forth above, the Complaint does not plead any covered losses or damages, and thus investigation

3

into non-covered losses or damages cannot derivatively sustain a CFAA claim. *See Better Holdco, Inc.*, 2021 WL 3173736, at *4 (dismissing CFAA claim where "[a]lthough [plaintiff] may technically have expended these resources in investigating [defendant's] post-employment access … , those resources are not a covered 'cost of responding to an offense' under the CFAA"); *Reis, Inc. v. Lennar Corp.*, 2016 WL 3702736, at *6 (S.D.N.Y July 5, 2016) (dismissing CFAA claim where plaintiffs "ma[de] no allegations that the investigation was for the purpose of looking into any damage to data, programs, or server system…"). Plaintiff yet again fails to address any of this caselaw in the Opposition. Instead, he bizarrely asks the Court to "[l]ook no further than IBM" and cites to an article on IBM's website about data breaches that has nothing to do with the CFAA. Opp. at 16. This is, of course, not binding (or even helpful) authority.

Additionally, as argued in the Motion, even *if* Plaintiff had sufficiently alleged damage or loss related to the "forensic computer investigation costs," the Complaint fails to break down which portion of his expenses are attributable to those costs necessary to meet the $5,000 CFAA jurisdictional threshold, rather than, for example, inapplicable attorney's fees. *See* Compl. ¶ 54 (alleging one-year loss "in excess of $5,000 expended in forensic computer investigation costs and attorney fees in this proceeding"). Courts have found that insufficiently specific loss allegations are fatal to a CFAA claim. *See Reis*, 2016 WL 3702736, at *7; *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015). Plaintiff fails to respond to this argument entirely.

In short, the Opposition's failure to respond to any of the caselaw in the Motion underscores that Plaintiff has failed to allege "loss" or "damage" necessary to sustain a CFAA claim.[2]

---

[2] Plaintiff claims an entitlement to punitive damages, while simultaneously conceding that "the CFAA does not itself provide for statutory punitive damages." Opp. at 17. He cites to a case that involved a CFAA claim where punitive damages were awarded but fails to note that the punitive damages were awarded based on a trespass to chattels claim not asserted here. *See Tyco Int'l v. John Does*, 2003 WL 23374767, at *4 (S.D.N.Y. Aug. 29, 2003). In any event, "[t]he plain

### B. The Complaint Fails to Plead Dechert's Involvement

In the Motion, Dechert pointed out that the Complaint does not allege any conduct on Dechert's part that violated the CFAA, a pleading failure Plaintiff has made twice previously. *See* Mot. at 13. While the Complaint alleges that Dechert "either had actual knowledge, or must have strongly suspected the illegal hacking activities," Compl. ¶ 38, the Complaint does not assert that Dechert accessed Plaintiff's computer, or even that Dechert directed Defendant Del Rosso to hire CyberRoot to do so. *See* Mot. at 13. Plaintiff fails to respond to this argument, other than to refer to his argument related to the conspiracy claim. Opp. at 18. This alone is fatal to Plaintiff's claim.

## II. The Complaint Fails to Plead a Claim for a Conspiracy to Violate the CFAA

As explained in the Motion, the Complaint's failure to plead a substantive violation of the CFAA dispenses with the CFAA conspiracy claim. *See* Mot. at 14 (citing, e.g., *Espire Ads LLC v. TAPP Influencers Corp.*, 2023 WL 1968025, at *15 (S.D.N.Y. Feb. 13, 2023)). The Opposition fails to respond to this argument.

In all events, even if the Complaint had pleaded a substantive CFAA claim, it still does not include any "specific allegations of an agreement and common activities" between Dechert and Del Rosso necessary to sustain his conspiracy claim. *See* Mot. at 14-16 (citing *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 836 (N.D. Cal. 2014)). In support of its argument, Dechert pointed the Court's attention to two cases that involved more detailed allegations of a conspiracy that were still found insufficient to sustain a CFAA conspiracy claim. *Id.* (citing *Hyo Jung v. Chorus Music Studio, Inc.*, 2014 WL 4493795 (S.D.N.Y. Sept. 11, 2014); *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285 (M.D. Fla. 2012)). Yet again, the Opposition simply ignores this precedent.

---

language of the CFAA statute precludes an award of punitive damages." *Massre v. Bibiyan*, 2014 WL 2722849, at *4 (S.D.N.Y. June 16, 2014).

Instead, the Opposition rehashes the allegations in the Complaint, but tellingly absent are any allegations of an agreement between Dechert and Del Rosso to hack Plaintiff's computer. Plaintiff cites to allegations that *Del Rosso* "communicated with Aditja Jain … and CyberRoot"; that phishing emails were sent by CyberRoot to Plaintiff; that Del Rosso paid CyberRoot; and that Del Rosso "stored the stolen communications on his Laptop." Opp. at 19-20. Again, what is missing is Dechert's involvement; Plaintiff's sole references to Dechert are his allegations that Del Rosso "has been a private investigator for Dechert since approximately August 2014" and that Dechert was involved in defending a previous litigation brought by Plaintiff. *Id.* at 20. While Plaintiff asserts that "[i]t does not take a leap of faith to realize Dechert's extensive involvement in the hacking," *id.* at 21, it actually does, and in all events, that is not the applicable standard. Rather, the law requires Plaintiff to put forth "specific allegations of an agreement and common activities" between Dechert and Del Rosso, and he has plainly failed to do so. *See NetApp, Inc.*, 41 F. Supp. 3d at 835. There are simply no allegations that Dechert entered into an agreement with Del Rosso to hack Plaintiff's computer, and therefore his conspiracy claim fails.

**III.   Plaintiff's Conversion Claim in Barred by the Statute of Limitations**

Plaintiff's conversion claim accrued in January 2017 and is thus barred by the three-year statute of limitations that governs conversion claims in North Carolina. *See Honeycutt v. Weaver*, 257 N.C. App. 599, 609 (Ct. App. 2018) (citing N.C. Gen. Stat. § 1–52(4)). The Opposition's argument to the contrary rests on a fundamental misunderstanding of conversion. And its argument that equitable estoppel should prevent Dechert from raising the limitations argument holds no water.

**A.  The Claim Accrued When the Conversion Occurred, Not When Discovered**

The Opposition contends that Plaintiff's claim did not accrue on January 12, 2017, the date he alleges the hacking occurred, Compl. ¶ 69, but rather on January 13, 2023, the date he learned

6

of the presence of his emails on the Laptop, *id.* ¶ 19. By his telling, the elements of conversion were not satisfied until the latter date. Opp. at 6-7. Plaintiff's argument is simply incorrect.

Conversion requires "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owners." *Eley v. Mid/East Acceptance Corp. of N.C.*, 171 N.C. App. 368, 371 (Ct. App. 2005) (cleaned up). The Opposition contends that the final element was not satisfied until he learned that copies of his emails were held on the Laptop. Opp. at 7. But Plaintiff need not have known about the copies to have been excluded from his ownership rights, including controlling the use of his emails. Even if merely copying emails constituted conversion,[3] Plaintiff's supposed dominion over the emails was allegedly violated as soon as they left his inbox and someone else could direct their use. *See Bridgetree*, 2013 WL 443698, at *15 (finding deprivation of plaintiff's exclusive control over electronically-stored proprietary information constituted conversion, with no consideration for plaintiff's knowledge of deprivation). In other words, if Plaintiff's substantive theory worked, then Plaintiff was excluded from his ownership rights on the date of the hacking, January 1, 2017, Compl. ¶ 69. Any other rule would create a special discovery rule for conversion of electronic files, which is not supported by the statute or the caselaw.

The Opposition's argument that the discovery rule saves his claim even if it accrued in January 2017 is plainly wrong. As Dechert explained in its opening brief, North Carolina courts have repeatedly and expressly held that the discovery rule does not apply to conversion claims. *See* Br. at 17 (citing *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 83 (Ct. App. 2011) ("[T]he

---

[3] *Compare Bridgetree, Inc. v. Red F Mktg. LLC*, 2013 WL 443698, at *14-15 (W.D.N.C. Feb. 5, 2013) (copying computer files without permission could constitute conversion) *with Addison Whitney, LLC v. Cashi*on, 2017 WL 2506604, at *7 (N.C. Super. June 9, 2017) (citing "growing body" of North Carolina case law holding that making copies of electronically stored information does not support claim for conversion).

7

claim accrues, and the statute of limitations begins to run, when the unauthorized assumption and exercise of ownership occurs—not when the plaintiff discovers the conversion"); *White v. Consol. Plan., Inc.*, 166 N.C. App. 283, 310 (Ct. App. 2004)); *see also First Invs. Corp. v. Citizens Bank, Inc.*, 757 F. Supp. 687, 690 (W.D.N.C. 1991) ("The Court is aware of no cases, and none have been offered by Plaintiffs, which would support Plaintiffs' position that the 'discovery rule' … should apply to conversion actions."), *aff'd*, 956 F.2d 263 (4th Cir. 1992). Indeed, Plaintiff acknowledges this binding precedent. Opp. at 8. Rather than attempt to distinguish this caselaw, however, the Opposition instead offers up citations to cases applying the discovery rule to breach of contract claims. *Id.* at 7 (citing *Chisum v. Campagna*, 376 N.C. 680, 701 (2021); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 2 (2017)). It offers no explanation why this Court should reject binding North Carolina precedent and adopt a new rule applicable to a different claim, contrary to statute and jurisprudence. Thus, because Plaintiff did not file his Complaint until six years after the alleged conversion, his conversion claim is time barred.

### B. Equitable Estoppel Does Not Bar Assertion of a Statute of Limitations Defense

The Opposition next submits that, even if Plaintiff is incorrect about the date of accrual and the application of the discovery rule, his claim is saved by the doctrine of equitable estoppel. Opp. at 8-9. It is wrong again.

As an initial matter, equitable estoppel "must be specifically *pled* to be properly before a trial court." *Eastpointe Hum. Servs. v. N. C. Dep't of Health & Hum. Servs.*, 2022 WL 2439157, at *9 (N.C. Ct. App. July 5, 2022) (holding that raising equitable estoppel defense in opposition to motion to dismiss insufficient). The Complaint nowhere pleads equitable estoppel, and that alone is fatal to the claim.

Moreover, equitable estoppel is only appropriate when certain conditions are present—

8

namely, "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Friedland v. Gales*, 131 N.C. App. 802, 807 (Ct. App. 1998) (citations omitted). "The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice." *Id.* A party seeking to invoke the doctrine of equitable estoppel "must plead the facts with particularity, demonstrating that it was the defendant's representations which delayed it from filing suit." *N.C. State Bar v. Gilbert*, 2006 WL 539367, at *4 (N.C. Ct. App. Mar. 7, 2006). The Complaint fails to do so here.

The Opposition contends that Defendants misled Plaintiff to his detriment because (1) Dechert "falsely represented itself as being fairly involved in the NY litigation, in the sense of being officers of the court with all the duties and obligations of fair play that entails" and (2) Del Rosso "urge[d] CyberRoot to prepare false invoices," Opp. at 9, "in an attempt to cover-up the true purpose of his hacking payments," Compl. ¶ 35. But neither allegation sustains a claim for equitable estoppel because Plaintiff fails to plead that "[he] was induced to believe that any certain facts existed or that [he] relied on such an inducement to [his] detriment." *Salmony v. Bank of Am. Corp.*, 2013 WL 3770688, at *8 (N.C. Ct. App. July 16, 2013).

With respect to the first allegation, the Complaint nowhere pleads that Plaintiff "relied" on Dechert's being "fairly involved in the NY litigation" to his detriment. *See Trana Discovery, Inc. v. S. Rsch. Inst.*, 2014 WL 5460611, at *8 (E.D.N.C. Oct. 27, 2014) ("[W]here a plaintiff does not allege that its reliance upon the defendant's misrepresentations led to its failure to timely file suit, courts will not apply equitable estoppel."). And in any event, the Opposition cites no case from

9

North Carolina or elsewhere that reliance on a law firm's general role as "officers of the court" is sufficient to sustain a claim for equitable estoppel. To the contrary, North Carolina courts have rejected claims of equitable estoppel based on vague allegations that the defendant "failed to deal with [plaintiffs] fairly and honestly" and "failed to make a full, open disclosure of material facts it should have known." *Salmony*, 2013 WL 3770688, at *8; *see also El Bey v. Stamp*, 2005 WL 8174036, at *1 (W.D.N.C. Jan. 14, 2005) (rejecting claim of equitable estoppel where plaintiff "fail[ed] to identify—with any specificity—any voluntary conduct by" defendant). Instead, equitable estoppel requires "misrepresentations [that] specifically induce a party to delay filing suit," *Trana*, 2014 WL 5460611, at *8, or at a minimum, that a party "actively and deliberately concealed those facts with the intent to prevent discovery thereof by others, including the plaintiff." *Friedland*, 131 N.C. App. at 809. Here, the Complaint nowhere pleads that Dechert "actively and deliberately concealed" any facts—indeed, as described above in Section II, the Complaint fails to provide a reasonable basis to believe that Dechert was even aware of the hacking—let alone that Plaintiff relied upon any such concealment to his detriment.

With respect to Plaintiff's allegation that "Del Rosso after the fact urged CyberRoot to prepare false invoices," Compl. ¶ 35, Plaintiff again fails to plead that he relied on such invoices to his detriment. *See Trana*, 2014 WL 5460611, at *8. Indeed, Plaintiff does not even allege that he had access to or was provided any such invoices, which would presumably be internal documents between Del Rosso and CyberRoot. Plaintiff cannot sustain a claim for equitable estoppel based on misrepresentations that were not even made to him. *Id.* (noting that "the misrepresentations must specifically induce a party to delay filing suit").

## **CONCLUSION**

For the foregoing reasons, Dechert respectfully requests that the Court dismiss Plaintiff's Complaint.

10

Dated: October 25, 2023
New York, New York

By: /s/ Sean Hecker
Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

Carmen Iguina González*
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Tel: (212) 763-0883
Fax: (212) 564-0883
ciguinagonzalez@kaplanhecker.com

*Attorneys for Defendant Dechert LLP*

*Admitted pro hac vice*