# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

OUSSAMA EL OMARI

                                              Plaintiff

                                                 v.

DECHERT LLP, et al.

                                         Defendants.

:
:
:
:  Civ. No.  1:23-cv-04607 (LAK/OTW)
:
:   ORAL ARGUMENT REQUESTED
:
:
:
:
:
:
:

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEL ROSSO AND VITAL MANAGEMENT SERVICES' MOTION TO DISMISS THE COMPLAINT AND IN OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION**

Samuel Rosenthal, Esq.
Lisa A. Herbert, Esq.
Nelson Mullins Riley & Scarborough LLP
330 Madison Avenue, 27th Floor
New York, New York 10017
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com
Tel:        212.413.9058
Fax:       646.428.2610

*Counsel for Defendants Nicholas Del Rosso and Vital Management Services, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.     COUNTERSTATEMENT OF FACTS AND RESPONSE TO NEWLY
SUBMITTED "AMENDED DECLARATION AND MEMORANDUM." .......... 1

ARGUMENT ................................................................................................................ 2

I.     PLAINTIFF STILL FAILS TO SHOW THAT JURISDICTION AND
VENUE ARE PROPER IN THIS DISTRICT. ....................................................... 2

     A.     Personal Jurisdiction Does Not Exist ......................................................... 2

     B.     Plaintiff Fails to Offer Any Facts Supporting Venue ................................. 7

II.     PLAINTIFF'S OVERLY SPECULATIVE COMPLAINT BASED ON
CONCLUSORY ALLEGATIONS CANNOT SURVIVE *TWOMBLY*
AND *IQBAL* .............................................................................................. 7

     A.     The Complaint Fails to Allege Facts Needed to Sustain the
Conversion Claim ...................................................................................... 8

     B.     The Complaint's References to Speculative Allegations Cannot
Support Claims that the CFAA Was Violated ............................................ 9

III.     PLAINTIFF IS UNABLE TO OVERCOME THE BAR IMPOSED BY
THE APPLICABLE STATUTE OF LIMITATIONS ......................................... 11

     A.     The Conversion and CFAA Counts Cannot Be Revived Based on a
Theory of Fraudulent Concealment .......................................................... 11

     B.     Plaintiff's Knowledge of the Alleged Scheme by RAK, involving
Defendants, Triggered the Statute of Limitations under the CFAA ......... 12

     C.     Plaintiff's Conversion Claim Remains Barred Because Discovery
Rule Does Not Apply and Equitable Estoppel is Inapplicable ................. 14

IV.     PLAINTIFF HAS BEEN UNABLE TO SHOW THAT THERE IS A
NEED  FOR EITHER A PRELIMINARY INJUNCTION OR
TEMPORARY RESTRAINING ORDER ........................................................... 16

CONCLUSION .......................................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
No. 09 Civ. 8862(GBD), 2013 WL 1286170 (S.D.N.Y. Mar. 28, 2013) .................................5

*Addison Whitney LLC v. Cashion*,
2017 WL 2506604 17 CVS 1956 (NCBS, June 9, 2017) .........................................................9

*Am. Infertility of N.Y., P.C. v. CNY Fertility, PLLC*,
21-CV-5566 (JMF), 2021 WL 4803539 (S.D.N.Y. Oct. 13, 2021)...........................................3

*Arvayo v. United States*,
766 F.2d 1416 (10th Cir. 1985) ..............................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................8, 10

*Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., LLC*,
565 F. Supp. 3d 748 (E.D.N.C. 2021).......................................................................................6

*Azima v. Del Rosso*,
No. 1:20CV954, 2021 WL 586282 (M.D.N.C. Dec. 10, 2021)................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................8, 10

*Benzemann v. Houslanger & Assocs., PLLC*,
924 F.3d 73 (2d Cir. 2019)......................................................................................................13

*Beskrone v. Berline*,
NO. 21 Civ. 4803 (PAE), 2023 WL 2023413 (S.D.N.Y. Feb. 15, 2023) .................................5

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
No. 20 CIV. 8686 (JPC), 2021 WL 3173736 (S.D.N.Y. July 26, 2021) .................................11

*Bisnews AFE (Thailand) Ltd. v. Aspen Rsch. Grp. Ltd.*,
437 Fed. App'x 57 (2d Cir. 2011)............................................................................................17

*Bogal v. Finger*,
59 A.D.3d 653 (N.Y. App. Div. 2009) ......................................................................................4

*Bridgetree, Inc. v. Red F Marketing LLC*,
et al, No. 3:10-CV-00228-FDW-DSC, Doc. No. 253, at 26 (W.D.N.C. Feb. 5,
2013) .................................................................................................................................8, 9, 10

ii

*Cascone v. United States*,
    370 F.3d 95 (1st Cir. 2004) ........................................................................................13

*Chappell v. Rich*,
    340 F.3d 1279 (11th Cir. 2003) ..................................................................................13

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ..........................................................................................6

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ....................................................................................................2

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*,
    850 N.E.2d 1140 (N.Y. 2006) ......................................................................................4

*Dreni v. PrinterOn Am. Corp.*,
    486 F. Supp. 3d 712 (S.D.N.Y. 2020) ........................................................................11

*Fighter Mgmt., Inc. v. Ballengee Grp., LLC*,
    No. 19 Civ. 11276 (AKH), 2020 WL 3000401 (S.D.N.Y. June 4, 2020) ..............3, 4

*First Investors Corp. v. Citizens Bank, Inc.*,
    757 F. Supp. 687 (W.D.N.C. 1991) ............................................................................15

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ..............................................................................................5, 6

*Friedland v. Gales*,
    509 S.E.2d 793 (N.C. Ct. App. 1998) ........................................................................15

*Jensen v. Cablevision Sys. Corp.*,
    No. 17 CIV. 00100 (ADS) (AKT), 2017 WL 4325829 (E.D.N.Y. Sept. 27,
    2017) ............................................................................................................................11

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
    34 A.D.3d 433 (N.Y. App. Div. 2006) ........................................................................4

*Lau v. Constable*,
    No. 16 CVS 4393, 2019 WL 6051554 (N.C Super. Ct. Forsyth Cnty. Sept. 24,
    2019) ............................................................................................................................15

*Lebron v. Encarnacion*,
    253 F. Supp. 3d 513 (E.D.N.Y. 2017) ..........................................................................3

*McIntyre v. United States*,
    367 F.3d 38 (1st Cir. 2004) ........................................................................................13

*Nexans Wires S.A. v. Sark-USA, Inc.*,
    319 F. Supp. 2d 468 (S.D.N.Y. 2004) ..................................................................11

*Norton v. Sam's Club*,
    145 F.3d 114 (2d Cir. 1998) ................................................................................3

*In re Parker*,
    No. 12-03128-8-SWH, 2015 WL 4747536 (Bankr. E.D.N.C. Aug. 10, 2015) .....................15

*Rotella v. Wood*,
    528 U.S. 549 (2000) ..........................................................................................13

*Rozar v. Mullis*,
    85 F.3d 556 (11th Cir. 1996) ..............................................................................13

*Skwira v. United States*,
    344 F.3d 64 (1st Cir. 2003) ................................................................................13

*State v. Vayu*,
    206 N.E.3d 236 (N.Y. 2023) ................................................................................4

*Stratton v. Royal Bank of Canada*,
    712 S.E.2d 221 (N.C. Ct. App. 2011) ..................................................................15

*Tai Sports, Inc. v. Hall*,
    No. 09 CVS 2201, 2012 WL 6753681 (N.C. Super. Ct. Dec. 28, 2012) ...................8

*Viper Publishing, LLC v. Bailey*,
    C/A No. 3:17-CV-00314-GCM, 2018 WL 3114536 (W.D.N.C. June 25, 2018) ...................14

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..........................................................................................5

*White v. Consol. Planning, Inc.*,
    603 S.E.2d 147 (N.C. Ct. App. 2004) ..............................................................15, 16

*Zubulake v. UBS Warburg*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ........................................................................17

**Rules**

Fed. R. Civ. P. 12(b) ..............................................................................................13

Fed. R. Civ. P. 12(b)(2) ...........................................................................................1

Fed. R. Civ. P. 12(b)(6)(2) .......................................................................................1

N.Y. C.P.L.R. 302(a) ...........................................................................................3, 4

**Statutes**

18 U.S.C. § 1030(g) .................................................................................................12

18 U.S.C. § 1391 ......................................................................................................7

18 U.S.C. § 1956(a) ..................................................................................................7

Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, LLP ("Vital") (collectively, the "Vital Defendants") file this Reply Memorandum (1) in support of their Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), and (2) in opposition to Plaintiff Oussama El Omari's ("Plaintiff" or "El Omari") Motion for a Preliminary Injunction.

## I.     COUNTERSTATEMENT OF FACTS AND RESPONSE TO NEWLY SUBMITTED "AMENDED DECLARATION AND MEMORANDUM."

The opening brief of the Vital Defendants contains a statement of facts addressing the various misstatements by El Omari in his request for a preliminary injunction.   Following his earlier submission and the Vital Defendants' opening brief in support of their Motion to Dismiss, Plaintiff filed an "Amended" Memorandum and Declaration in opposition to the Motion to Dismiss and in support of the request for a preliminary injunction. ("Pl. Am. Mem.").  No consent or request for permission was sought from the Court.  Those filings refer to an anonymous email dated September 26, 2023 sent to counsel in this case (the "KB Email"), and contains substantive material not addressed previously.  *See* ECF Nos. 56, 57, 57-1 to 57-6.  Plaintiff followed that filing with a new one, this time requesting permission to file a redacted copy of another anonymous email, this one dated October 20, 2023, and sent to counsel (the "Second KB Email").  *See* ECF No. 70-71.  The material redacted by Plaintiff appears to indicate that he had notice that his email account had been hacked as early as 2018, which would confirm that his claim was barred by the statute of limitations.  *See* Rosenthal Supp. Decl., Ex. B.  No attempt was made by Plaintiff to authenticate either allegedly anonymous email. These filings should be excluded from the record.

If the Court does not exclude the allegedly anonymous KB emails and "Amended" Memorandum and Declaration in its entirety, it should consider the following facts:  While claiming that the KB Email demonstrates the need for a preliminary injunction because it confirmed that privileged emails with El Omari's counsel had been hacked, *see* Pl. Am. Mem. 30,

1

ECF No. 56 at 37, the full email fails to reflect any privileged communications between El Omari and his counsel and appears to essentially involve spam.  More important, the KB Email shows that a preliminary injunction would be ineffective in any event since the email shows that any hacked material is in the hands of some third party who is not subject to this Court's jurisdiction, and who would therefore be undeterred by a preliminary injunction.  Most importantly, as reflected above, the second email, appears to contain a notice that El Omari's email account had been hacked, which would result in his entire claim being time-barred.

<b>ARGUMENT</b>

## I. PLAINTIFF STILL FAILS TO SHOW THAT JURISDICTION AND VENUE ARE PROPER IN THIS DISTRICT.

It is unclear why Plaintiff chose to file this case in this District.   He is a resident of North Carolina suing two other North Carolina Defendants alleging that a laptop which has been in London and under the Court's jurisdiction there contains material hacked from him by a firm located in India. Notwithstanding those incontrovertible facts, Plaintiff now claims that he can satisfy his burden of establishing both jurisdiction and venue.   *See* Pl. Am. Mem. 4–10, ECF No. 56 at 11–17.  As demonstrated below, he can establish neither.

### A. Personal Jurisdiction Does Not Exist

As to his claim based on general jurisdiction, Plaintiff does not dispute that a court may exercise general jurisdiction over a nonresident only in the "exceptional case" where the defendant's contacts are so systematic and continuous that the defendant is "at home" in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 751, 761 n.19 (2014).   Nor does he address arguments that the Complaint's allegations—namely that the Vital Defendants made repeated trips to New York and hacked data that was used in New York litigation, *see, e.g.*, Compl. ¶ 15, ECF No. 1 at ¶ 15—fail to show that Defendants were "at home" in New York.   *See* Pl. Am. Mem. 9,

2

ECF No. 56 at 16. It thus appears that El Omari has abandoned any argument concerning general jurisdiction over the Vital Defendants. *See Am. Infertility of N.Y., P.C. v. CNY Fertility, PLLC*, 21-CV-5566 (JMF), 2021 WL 4803539, at *1 (S.D.N.Y. Oct. 13, 2021) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed . . . ." (quoting *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998))). And for good reason. Courts frequently reject finding general jurisdiction based on far more frequent contacts by a non-resident with a forum state. *See, e.g.*, *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 518 (E.D.N.Y. 2017) (general jurisdiction requires a domicile in the forum and cannot be established based on frequent trips there); *Fighter Mgmt., Inc. v. Ballenge Grp., LLC*, No. 19 Civ. 11276 (AKH), 2020 WL 3000401, at *2 (S.D.N.Y. June 4, 2020) (general jurisdiction found lacking where the defendants had "several clients in New York with whom they communicate[d] and visit[ed] regularly," and "[i]n connection with their services, Defendants appear[ed] at numerous New York State venues").

Plaintiff also ignores caselaw cited in the Vital Defendants' opening brief in arguing, in the alternative, that specific jurisdiction can be established under both New York's long-arm statute and the Due Process Clause. As a preliminary matter, Plaintiff has abandoned his previous argument that specific jurisdiction can be predicated on an agency theory, which he previously advanced in seeking a preliminary injunction. *See* Pl's. Mem. of Law in Supp. of Mot. for Prelim. Inj. 12–16, ECF No. 7 at 18–22.

Plaintiff instead relies on N.Y. C.P.L.R. 302(a) to argue that the Vital Defendants' connection to Dechert, and the trip made to deliver a device to someone in the forum are sufficient to find that they "transact[ed] business within the state" or contracted outside the state "to supply goods or services in the state." *See* Pl. Am. Mem. 4–6, ECF No. 56 at 11–13. Other than the single trip to New York and delivery of a device there, nothing indicates that the Vital Defendants

had engaged in any activity in New York.

Plaintiff answers by arguing that a single activity can give rise to personal jurisdiction under the New York long-arm statute.   *Id.* at 5, ECF No. 56 at 12.   Plaintiff ignores the holding cited in support of his argument.   *See id.* (citing *State v. Vayu*, 206 N.E.3d 236 (N.Y. 2023)).   In *Vayu*, the court nowhere adopted the position that a single occurrence within the state, standing alone, is sufficient to satisfy the long-arm statute.   On the contrary, the court there held that two requirements must be satisfied to establish personal jurisdiction based on a single occurrence. First, the defendant must have purposefully availed itself of the benefits of doing business in New York.   *Id.* at 1240.   No such showing is even attempted here.   He cannot satisfy that showing by alleging that Mr. del Rosso flew into an airport there and possibly took a taxi somewhere.   If that were enough, then the millions of travelers going through New York airports would all be subject to personal jurisdiction.

Second, N.Y. C.P.L.R. 302(a) requires a showing—even where the plaintiff is relying on a single act—that "the defendant's activities here were purposeful," but also that "there is a substantial relationship between the transaction and the claim asserted."   *Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433, 434 (N.Y. App. Div. 2006) (quoting *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006)); *see also Bogal v. Finger*, 59 A.D.3d 653, 654–54 (N.Y. App. Div. 2009).   Plaintiff argues that because the Vital Defendants were providing services to Dechert, which had offices in New York, it is "likely" that the Vital Defendants performed services while in New York for Dechert.   *See* Pl. Am. Mem. at 7, ECF No. 56 at 14.   That argument fails to show how those services rendered in New York related in "substantial" part to his claim.   Plaintiff ignores his own admission that the supposed "services" related to his claim—namely the hacking of his computer—allegedly occurred outside the United

4

States, namely in India and not in New York. *See, e.g.*, Compl. ¶¶ 32–33, ECF No. 1 at ¶¶ 32–33.

Plaintiff cannot even show any relationship between Del Rosso's trip to New York to deliver a computer device and the allegations in this case. Indeed, "[f]or specific jurisdiction to exist, 'there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence takes place in the forum State and is therefore subject to the State's regulation." *Beskrone v. Berline*, NO. 21 Civ. 4803 (PAE), 2023 WL 2023413, at *7 (S.D.N.Y. Feb. 15, 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)). In order to be consistent with due process, "[a] defendant's *suit-related conduct must create a substantial connection* with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). El Omari has not come close to showing anything of the sort. He quotes Del Rosso's testimony in the London proceeding, where Del Rosso corrected a statement in his earlier witness statement, without referring to a critical fact. *See* Pl. Am. Mem. 4–8, ECF No. 56 at 11–15. Del Rosso indicated that he meant to convey in his statement that he was flying to New York (not London) to deliver a secure device. *See id.* at 6, ECF No. 56 at 13. Del Rosso also indicated that the trip occurred in August 2016, *see* Rosenthal Supp. Decl., Ex. A. ¶ 14, over a year before El Omari's computer was allegedly hacked through phishing emails. *See* Compl. ¶ 1, ECF No. 1 at ¶ 1. Accordingly, the delivery of the computer device did not cause nor had any alleged connection to the alleged hacking of El Omari's emails. *See Absolute Activist Master Value Fund, Ltd. v. Ficeto*, No. 09 Civ. 8862(GBD), 2013 WL 1286170, at *12 (S.D.N.Y. Mar. 28, 2013) ("These trips are, at best, attenuated, 'but for' causes of the injury to the Funds, and are insufficient to confer personal jurisdiction under Second Circuit, given the limited nature of each defendant's contacts." (citation omitted)). Even more importantly, the trip concerning the computer device is not even "suit-related conduct" that bears upon El Omari's allegations. *Walden*, 571 U.S. at 284.

5

Nor does the existence of the laptop which is now the subject of litigation in London help Plaintiff.  Plaintiff does not even try to argue that the laptop was delivered to Dechert or was anywhere near New York when El Omari's computer was allegedly hacked.  El Omari contends that he was hacked in 2017; the Vital Defendants' laptop was not purchased until 2 years later, in 2019.  *See* Del Rosso Wit., Statement, ¶ 16.   Similarly, the hard drive at issue in the London proceedings has never been shown to (1) have anything to do with New York, and (2) contain any of Plaintiff's emails.

Moreover, Plaintiff recognizes, as he must, *see* Pl. Am. Mem. 4, ECF No. 56 at 11, that even if the long-arm statute can be satisfied, the Due Process Clause prohibits a defendant from being forced to defend himself in a forum where he lacks minimum contacts.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).  Once it is realized that the computer device delivered to New York in 2016 had nothing to do with the allegations in this case, the only thing remaining is that the Vital Defendants were performing services for a law firm which had a New York office.

Plaintiff fails to cite a single case finding similar contacts sufficient to establish minimum contacts satisfying the Due Process Clause.  Nor does he deal with the test for satisfying the Due Process Clause which, similar to the test under the long-arm statute, "focuses on whether a defendant 'purposefully directed his activities at residents of the forum' and whether the causes of action arise out of or relate to those activities."  *See Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., LLC*, 565 F. Supp. 3d 748, 759 (E.D.N.C. 2021) (citation omitted); *see also Ford Motor*, 141 S. Ct. at 1024–25.  Because the Vital Defendants allegedly directed their activities at a North Carolina resident, and the cause of action did not relate to activities by the Vital Defendants associated with New York, jurisdiction is lacking.

6

### B.      Plaintiff Fails to Offer Any Facts Supporting Venue

Similarly, Plaintiff cannot show that venue is proper.  Plaintiff relegates the venue issue to a footnote.  *See* Pl. Am. Mem. 1 n.1, ECF No. 56 at 8 n.1.  Curiously, he asserts, without explanation, that venue is proper under 18 U.S.C. § 1956(a).  *Id.*  But that statute deals with civil RICO, which is not at issue here.

Equally unavailing is Plaintiff's reliance on 18 U.S.C. § 1391.  *Id.*  Plaintiff asserts, again without explanation, that a substantial part of the events occurred in this jurisdiction because Dechert obtained and used hacked material in the proceedings against El Omari in New York.  *Id.* Plaintiff fails to deal with caselaw cited in our opening brief holding that those types of conclusory allegations are insufficient to sustain a claim.  *See* Def's Mem. of Law in Supp. of Mot. to Dismiss 11–14, ECF No. 35 at 19–22.  As discussed above, Plaintiff has yet to identify any activity in New York relating to the alleged hacking of his computer.

Furthermore, Plaintiff can hardly show that a substantial portion of the events occurred in this jurisdiction when he fails to even deal with hacking cases cited in Vital Defendants' opening brief holding that the proper place to bring such a case is where the hacking allegedly occurred, which according to his Complaint was in India, *see* Compl. ¶¶ 32–34, 39, or alternatively, where El Omari's computer was located, which was presumably in North Carolina.  *See* Pl. Am. Mem. 4, ECF No. 56 at 11.  Consequently, jurisdiction and venue are lacking, requiring dismissal.

### II.     PLAINTIFF'S OVERLY SPECULATIVE COMPLAINT BASED ON CONCLUSORY ALLEGATIONS CANNOT SURVIVE *TWOMBLY* AND *IQBAL*

Plaintiff offers three causes of action:  (1) conversion under North Carolina law; (2) a violation of the Computer Fraud and Abuse Act ("CFAA"); and (3) a conspiracy to violate the CFAA.  In their Motion to Dismiss, the Vital Defendants argued that the Complaint was based on

a series of overly speculative and conclusory allegations, violating the precepts established by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's Opposition does not address those deficiencies, and it only highlights those failures.

### A.    The Complaint Fails to Allege Facts Needed to Sustain the Conversion Claim

Plaintiff contends that the hacking of his computer constituted conversion under New York law.  He offers this argument, notwithstanding his admission that in order to sustain such a claim, the Plaintiff has the burden of showing not only that his property was taken by Defendants, but also, that they exercised dominion and control over his emails to the exclusion of Plaintiff's use of those same emails.  "At its core, conversion 'is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . .'" *Tai Sports, Inc. v. Hall*, No. 09 CVS 2201, 2012 WL 6753681, at *19 (N.C. Super. Ct. Dec. 28, 2012) (citation omitted).

The Complaint does not even try to allege that Plaintiff was deprived of the use of his emails after they were supposedly hacked in 2017.  There is absolutely nothing in the Complaint offering any such allegation, other than his parroting of language that he was deprived of his "right to dominion and control over each and every email."    Compl. ¶ 69, ECF No. 1 at ¶ 69.  The Complaint fails to identify a single email which was allegedly converted by the Vital Defendants to their own use.  In fact, the Complaint itself makes clear that instead of asserting that El Omari was unable to access and use those emails, he was allegedly deprived only of the "confidentiality" of his unidentified emails.  *Id.* ¶ 72, ECF No. 1 at ¶ 72.

In support of this claim Plaintiff cites *Bridgetree, Inc. v. Red F Marketing LLC*, et al, No. 3:10-CV-00228-FDW-DSC, Doc. No. 253, at 26 (W.D.N.C. Feb. 5, 2013), for the proposition that it would suffice "if Defendants altered the condition of Plaintiff's rights to those computer files." *See* Pl. Am. Mem. 16, ECF No. 56 at 23.  While that case supports the conclusion that the copying

of computer files could in some cases constitute conversion, that holding is questionable in light of more recent decisions.  See, e.g., *Addison Whitney LLC v. Cashion*,  2017 WL 2506604 17 CVS 1956 (NCBS, June 9, 2017) ("A growing body of case law from this Court has held that "'making a copy of electronically-stored information which does not deprive the plaintiff of possession or use of information, does not support a claim for conversion.") (citing *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at *53, 2016 WL 3850403 (N.C. Super. Ct. June 20, 2016).

Moreover, the facts at bar are a far cry from those in *Bridgetree*.  That case involved a terminated employee who downloaded his employer's proprietary files prior to joining a competitor.  The jury was therefore entitled to find—as it did—that the copying of proprietary files sufficiently deprived the plaintiff of his right to maintain the confidentiality of its secrets.  Here, there is no claim as to what was copied or anything was confidential, it is not even clear the emails involved confidential communications.

Accordingly, because Plaintiff has failed to allege, with even the slightest specificity what was taken, and how it interfered with his right to maintain the confidentiality of his emails, the conversion count must be dismissed.

### B  The Complaint's References to Speculative Allegations Cannot Support Claims that the CFAA Was Violated

The Complaint asks the Court to make the unreasonable assumption that because the Vital Defendants hired and paid CyberRoot for services during the same period when Plaintiff was sent phishing emails, *see* Compl. ¶¶ 34, 60, ECF No. 1 at ¶¶ 34, 60, CyberRoot must have been paid by the Vital Defendants to hack El Omari's email account.  He asks this Court to join him in that leap of logic by ignoring the complete absence of any allegations that CyberRoot sent El Omari the phishing emails alleged in the Complaint, or that those phishing emails were anything other than what has become an ordinary feature of computer usage.

9

As demonstrated in Vital Defendants' opening brief, Plaintiff cannot avoid dismissal under *Twombly* and *Iqbal* by alleging that he can bridge the gap between CyberRoot being paid by the Vital Defendants and the phishing emails sent to El Omari by alleging that an individual who is not even alleged to have been employed by CyberRoot, Aditya Jain, was given a list of individuals to hack.  Recognizing that the link between Jain and CyberRoot is too attenuated to establish that CyberRoot hacked El Omari Plaintiff argues that facts relating to Jain are "not necessarily central to establishing Plaintiff's claims."  *See* Pl. Am. Mem. 18, ECF No. 56 at 25.  But that is the only fact offered to tie the Vital Defendants to the alleged hacking.  Without the allegations concerning payments to Jain, the only remaining averment is one concerning the Vital Defendants paying CyberRoot to provide security services, and it is hardly a plausible basis for alleging that the Vital Defendants hacked El Omari's computer.  Nor can Plaintiff make up for this deficiency by arguing that he should be excused from explaining how his pleadings give rise to a plausible claim by arguing that facts relating to Jain are solely within the knowledge of the Vital Defendants.  *See id.* There are no facts, just a vague, conclusory allegation that Jain was given a list of individuals to hack, CyberRoot was a firm known to have been involved in hacking, and that CyberRoot was paid previously by the Vital Defendants.

Finally, Plaintiff's alleged conspiracy suffers from the same defect: there is no connection between hiring and paying CyberRoot, and allegations that there was some agreement between the Vital Defendants and Dechert to hack emails for use in litigation with El Omari.  The fallacy in Plaintiff's theory is best illustrated by Plaintiff's own brief, where he sets forth the alleged links in the chain claimed to support a conspiracy theory.  *See id.* at 26, ECF No. 56 at 33.  According Plaintiff, Vital was hired as an investigator in 2014, thereafter hired and paid CyberRoot, all of which occurred prior to litigation in which Dechert defended against claims by El Omari.  *See id.*

Not only is there a total absence of any evidence that any hacked emails were used in that litigation, it is far more plausible that Vital Management's retention by Dechert, *and* later engagement with CyberRoot had nothing to do with the phishing emails sent by some unknown party to El Omari.[1]

Accordingly, all three causes of action are based on the type of vague, speculative allegations found inadequate to sustain a cause of action, and must therefore be dismissed.

## III.   PLAINTIFF IS UNABLE TO OVERCOME THE BAR IMPOSED BY THE APPLICABLE STATUTE OF LIMITATIONS

All three causes of action alleged in the Complaint are barred by the applicable statute of limitations regarding each of those claims.

### A. The Conversion and CFAA Counts Cannot Be Revived Based on a Theory of Fraudulent Concealment

Plaintiff does not dispute that the alleged hacking giving rise to his claim occurred more than five years before filing suit, and thus beyond the statutory periods for filing such claims.   He argues nevertheless that he can avoid the statute's bar by arguing that the statute was tolled by virtue of Defendants' concealment of their actions.

One insurmountable obstacle to Plaintiff's theory is that a claim for fraudulent concealment requires some showing that Plaintiff relied on false statements by Defendants designed to conceal

---

[1] Defendants also join in Dechert's argument that the losses alleged by Plaintiff cannot satisfy the statute.  *See* Dechert's Mem. of Law 14–17, ECF No. 50 at 21–23.  El Omari claims that he has suffered three forms of loss: (1) "legal fees and costs"; (2) "forensic computer investigation costs relating to investigating, assessing the scope of the hacking, and seeking to restore the complete loss of the confidentiality of the emails"; and (3) "loss of the valuable confidentiality of the data in the attorney-client communication e-mails which relate to El Omari's NY litigation."  Compl. ¶¶ 50, 52, ECF No. 1 at ¶¶ 50, 52.  None of these losses are actionable, as a matter of law, under the CFAA.  *See Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 736–37 (S.D.N.Y. 2020); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474–76 (S.D.N.Y. 2004); *Jensen v. Cablevision Sys. Corp.*, No. 17 CIV. 00100 (ADS) (AKT), 2017 WL 4325829, at *13 (E.D.N.Y. Sept. 27, 2017); *Better Holdco, Inc. v. Beeline Loans, Inc.*, No. 20 CIV. 8686 (JPC), 2021 WL 3173736, at *4 (S.D.N.Y. July 26, 2021).

their hacking activities.  *See, e.g.*, *Azima v. Del Rosso*, No. 1:20CV954, 2021 WL 586282, at *4 (M.D.N.C. Dec. 10, 2021) (rejecting concealment as a bar to the statute of limitations absent any allegation that plaintiff relied on defendants' conduct concealing hacking efforts).

Here, Plaintiff does not even pay lip service to that requirement.  For example, he alleges that Defendants concealed their hacking activities by creating false invoices purporting to show that CyberRoot was engaged in legitimate activities, rather than hacking.  *See* Pl. Am. Mem. 14, ECF No. 56 at 21.  But Plaintiff never tries to allege that he was aware of those invoices, much less that he relied on them in failing to bring a claim earlier.

## B. Plaintiff's Knowledge of the Alleged Scheme by RAK, involving Defendants, Triggered the Statute of Limitations under the CFAA

Plaintiff also tries to avoid the two-year statute of limitations applicable to his claim under the Computer Fraud and Abuse Act ("CFAA").  *See* 18 U.S.C. § 1030(g).  As demonstrated above, the material allegedly hacked from Plaintiff's computer, which Plaintiff has attempted to place before the Court in the KB Emails, appears to reflect that Plaintiff was made aware of the hacking in 2018.  *See* Rosenthal Supp. Decl., Ex. B.[2]  If so, all of Plaintiff's claims would be time-barred.

 Plaintiff also admits—as he must —that he was aware of an alleged scheme by RAK when he sued various parties in 2020, three years before filing this suit, for allegedly participating in that scheme.  *See* Compl. ¶ 18, ECF No. 1 at ¶ 18.  He even argues that as a result of purported hacking scheme, documents from his own files were used against him when he was litigating claims against his former employer.  *See id.* ¶¶ 16–17, 36, ECF No. 1 at ¶¶ 16–17, 36.  He nevertheless argues that because he was unaware of the involvement of these specific Defendants in this particular

---

[2] Given that Plaintiff has asked the Court to consider the Second KB Email, he should be required to produce to the Court the full email  referenced in the attachment to that email, which Plaintiff attempted to redact even though it would suggest that this case is time barred as the email in question appears to reflect notice to Plaintiff in 2018 that his account had been hacked.

aspect of the alleged scheme, the statute did not begin running until January 13, 2023, when he was notified that emails belonging to him or his attorney had been found on the Vital Defendants' computer located in London.  *See* Pl. Am. Mem. 10–11, ECF No. 56 at 17–18.

Plaintiff ignores caselaw holding that a party need not be aware of all of the evidence, or even participants in a scheme in order for the statute to begin running.  Under federal law, "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 81 (2d Cir. 2019).  Accordingly, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000).  Moreover, the statute of limitations clock began to run when "the facts which support a cause of action . . . should be apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996) (citation omitted).  This does not turn on the plaintiff's own subjective knowledge.  *Cascone v. United States*, 370 F.3d 95, 104 (1st Cir. 2004); *Arvayo v. United States*, 766 F.2d 1416, 1422 (10th Cir. 1985).  "Once a duty to inquire is established, the plaintiff is charged with the knowledge of what he or she would have uncovered through a reasonably diligent investigation." *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004).  A claim is deemed to accrue when, if armed with the results of that investigation, a reasonable person would know that he had been injured and that there is a causal connection between the defendant and his injury.  *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); *McIntyre*, 367 F.3d at 52; *Skwira v. United States*, 344 F.3d 64, 78 (1st Cir. 2003).

Accepting the truth of Plaintiff's allegations—as required by Fed. R. Civ. P. 12(b)— renders it even more difficult to accept Plaintiff's contention that he lacked sufficient notice that his computer had been hacked.  He claims that his hacked emails were used against him in the

New York litigation by Dechert and former partner Linda Goldstein, which was ongoing in 2016. Compl. ¶¶ 4, 38, ECF No. 1 at ¶¶ 4, 38.  He goes on to allege that Dechert and Goldstein must have at least "strongly suspected" that the material had been hacked "[s]ince the information was found in emails between El Omari and his attorney." *Id.* ¶ 38, ECF No. 1 at ¶ 38.  Plaintiff concludes, therefore, that Dechert Partner Goldstein "must have deliberately avoided learning about the illegal sourcing of the sensitive information." *Id.*

The Court need not accept Plaintiff's illogical contention that he needed a "crystal ball" to have known that his computer had been hacked, *see* Pl. Am. Mem. 10, ECF No. 56 at 17, but that this fact should have been so obvious to Dechert and Goldstein that they must have "deliberately avoided learning" the truth.  Contrary to Plaintiff's claim, all he needed to put him on notice of the alleged hacking was the same information allegedly available to Dechert and Goldstein.

### C.  Plaintiff's Conversion Claim Remains Barred Because Discovery Rule Does Not Apply and Equitable Estoppel is Inapplicable

Under North Carolina law, "conversion claims are subject to a three-year statute of limitations that runs from the date of the alleged wrongful conduct." *Viper Publishing, LLC v. Bailey*, C/A No. 3:17-CV-00314-GCM, 2018 WL 3114536, at *2 (W.D.N.C. June 25, 2018).  El Omari attempts to argue that "the statute of limitations began to run on January 13, 2023, when [he] learned of the hacking." Pl. Am. Mem. 13, ECF No. 56 at 20.  His Complaint avers the same. *See* Compl. ¶ 70 ("The Laptop of Dechert LLP's investigator, Del Rosso, *discovered in 2023* has caused new and ongoing injury to El Omari beginning in January 2023."  (emphasis added)).  But that argument rests on a misunderstanding of North Carolina law.  Tellingly, El Omari does not cite a single case applying the discovery rule to conversion claims under North Carolina law. *See* Pl. Am. Mem. at 12–13, ECF No. 56 at 19–20.  As opposed to employ of the discovery rule, North Carolina courts have specifically explained that a conversion claim "accrues, and the statute of

14

limitations begins to run, when the unauthorized assumption and exercise of ownership occurs—not when the plaintiff discovers the conversion." *Stratton v. Royal Bank of Canada*, 712 S.E.2d 221, 227 (N.C. Ct. App. 2011) (citing *White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 165–66 (N.C. Ct. App. 2004)).

Because North Carolina courts have emphatically rejected his position, El Omari cannot use the discovery rule to salvage his conversion claim under North Carolina law. *See id.*; *see also Lau v. Constable*, No. 16 CVS 4393, 2019 WL 6051554, at *7 (N.C Super. Ct. Forsyth Cnty. Sept. 24, 2019) (recognizing that a conversion claim is not subject to a discovery rule); *In re Parker*, No. 12-03128-8-SWH, 2015 WL 4747536 (Bankr. E.D.N.C. Aug. 10, 2015) ("A claim for conversion accrues, and the statute of limitations begins to run, when the unauthorized conversion occurs, not when the plaintiff discovers it." (citations omitted)); *First Investors Corp. v. Citizens Bank, Inc.*, 757 F. Supp. 687, 690 (W.D.N.C. 1991) (stating that a conversion claim "accrue[s] upon the conversion itself rather than upon its discovery"). As a matter of law, the conversion claim is barred because the alleged hacking to El Omari's laptop occurred in 2017, and El Omari's Complaint was filed in 2023, which is over three years from the alleged hacking.

Without the aid of the discovery rule, El Omari maintains that the Vital Defendants are equitably estopped from relying upon the statute of limitations for conversion claims. Pl. Am. Mem. 13–15, ECF No. 56 at 20–22. But his weak invocation of equitable estoppel similarly fails. To show equitable estoppel, a plaintiff must demonstrate:

> (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

*White*, 603 S.E.2d at 162 (quoting *Friedland v. Gales*, 509 S.E.2d 793, 796-97 (N.C. Ct. App.

1998)).  El Omari fails to devote any argument to several of the critical elements of his equitable estoppel defense, thus waiving the defense itself.  *See* Pl. Am. Mem. 13–15, ECF No. 56 at 20–22.  For example, he never maintains that the Vital Defendants possessed any "intention that such conduct [would] be acted on by the other party," nor does he ever suggest that the Vital Defendants possessed "knowledge, actual or constructive, of the real facts."  *See id.*  Most importantly, besides one conclusory sentence, El Omari never even explains how he "relied upon the conduct of [the Vital Defendants] . . . to his prejudice."  *See id*.  The reliance prong undermines El Omari's equitable estoppel defense because neither his Complaint or Amendment Memorandum ever suggest the Vital Defendants "intentionally prevented [him] from discovering that he had been injured and had a cause of action."[3] *White*, 603 S.E.2d at 306.  Indeed, he never even maintains what the Vital Defendants communicated to him that would have induced his reliance or otherwise urged him to act in a certain way.

## IV.   PLAINTIFF HAS BEEN UNABLE TO SHOW THAT THERE IS A NEED FOR EITHER A PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER

Plaintiff sought a preliminary injunction when he filed his Complaint in this action on June 1, 2023.  When he did not get any relief from this Court, he then filed a subsequent Motion for a Temporary Restraining order on September 7, 2023, seeking the same relief, even though it was filed days before the Court was scheduled to hold a settlement conference with the parties and even though nothing had changed between his earlier request for a preliminary injunction and the filing of the temporary restraining order application.  The requested relief is unnecessary in light of the Vital Defendants' agreement to the same stipulation between Dechert and Plaintiff as long

---

[3] As argued above, *supra* pp. 7–9, and within the Vital Defendant's Memorandum of Law, Vital Def.'s Mem of Law 19, ECF No. 35 at 27, El Omari's conversion claim is deficient as a matter of law.  This failure contributes to the obstacles to his equitable estoppel invocation.

as they are also able to comply with any order entered by the Court in England regarding the laptop.

Plaintiff has yet to provide an answer why he needs a preliminary injunction. As demonstrated in the Vital Defendants' opening brief, "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Bisnews AFE (Thailand) Ltd. v. Aspen Rsch. Grp. Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (citation omitted). Plaintiff ignores that requirement. That is enough, standing alone, to warrant denial of his requested relief. In fact, there is no irreparable injury which could occur. The real motivation for seeking such relief is to forestall an examination by a forensic expert of the Vital Defendants' laptop in London.

None of the arguments advanced for seeking injunctive relief have merit. Plaintiff argues, first, that the relief he is seeking would not conflict with the ruling by the London court, and that the Vital Defendants are misstating what occurred in London; he claims that no order was entered directing how the laptop would be handled. *See* Pl. Am. Mem. 27–29, ECF No. 56 at 34–36. On the contrary, Defendants previously notified the Court and Plaintiff that an order has not been issued by the Court in London, directing how the laptop would be handled. *See* ECF No. 61. The preliminary injunction sought by Plaintiff would directly conflict with the order issued by the English Court.

Second, Plaintiff argues that he needs an injunction, rather than a litigation hold, because the latter only constitutes an informal agreement among the parties, which must therefore be court ordered to be effective. Any such justification is meritless as a litigation hold is recognized as a matter of law. *See, e.g.*, *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). A violation of a litigation hold is enforceable by the court overseeing the case. *See id.*

Third, Plaintiff relies on an allegedly anonymous source who sent the KB Emails from Plaintiff's computer to a number of attorneys in this case, arguing that this "underscores the need

for injunctive relief." *See* Pl. Am. Mem. 30, ECF No. 56 at 37.  In fact, those emails do just the opposite.  There is no contention that this material came from the Vital Defendants.  As an initial matter, Plaintiff claims to have no idea who sent out the KB Emails, and accordingly, has no idea how many individuals have received it in the past, or when they received it.  The injunctive relief sought by Plaintiff would not even be directed to the party who is sending out the materials reflected in the KB Email.  The new KB Emails also undercuts any argument that Plaintiff can show a likelihood of success in this case.  The anonymous material leaves unanswered how hard drive material belonging to Mr. El Omari's attorney ended up on Mr. El Omari's computer.

Finally, Plaintiff implies that because he has now written to the London court, expressing his concerns, that somehow makes it more reasonable for this Court to take the extraordinary step of entering an order that would impact the proceedings in London.  *See id.* at 28 n.3, ECF No 56 at 35 n.3.  Once again, his argument leads to the opposite conclusion:  El Omari did nothing to address in a timely fashion any concerns he had with the disposition of the laptop, and only now, has written to the Court instead of properly seeking to intervene.  That kind of dilatory response undercuts any notion that El Omari believes that injunctive relief is needed.

In sum, this Court should reject the request for injunctive relief since it would not only delay a review of the laptop and allow the parties to determine whether Mr. El Omari's alleged data even exists on the laptop.

## CONCLUSION

El Omari's entire Complaint should be dismissed with prejudice. In the alternative, the Motion for a Preliminary Injunction should be denied.

**Respectfully submitted,**


*/s/ Samuel Rosenthal*

Samuel Rosenthal, Esq.

Lisa A. Herbert, Esq.

Nelson Mullins Riley & Scarborough LLP

330 Madison Avenue, 27th Floor
New York, New York 10017
Tel:    212.413.9058
Fax:    646.428.2610
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso*
*and Vital Management Services, Inc.*